**ATHENS COMMUNITY HOSPITAL, INC., et al.**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellant.**

**HOSPITAL CORPORATION OF AMERI-CA, a Tennessee Corporation**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, et al., Appellants.**

**Nos. 81–1807, 81–1814.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1982.

Decided August 27, 1982.

Susanne M. Lee, Atty., Dept. of Health and Human Services, Washington, D. C., with whom Juan A. del Real, Gen. Counsel, Lynne K. Zusman, Deputy Gen. Counsel and Henry R. Goldberg, Atty., Dept. of Health and Human Services, Washington, D. C., were on the brief, for appellants.

Kenneth M. Raisler, Valerie K. Schurman and Royce C. Lamberth, Asst. U. S. Attys., Washington, D. C., also entered appearances for appellants.

James C. Pyles, Washington, D. C., with whom Robert A. Klein, Washington, D. C., was on the brief for appellees. Patrick K. O'Hare, Washington, D. C., also entered an appearance for appellees.

Before ROBINSON, Chief Judge, BORK, Circuit Judge and LARSON,* Senior District Judge for the United States District Court of Minnesota.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

These consolidated actions were brought by a group of hospitals that seek reimbursement for their provision of health care under the Medicare program. The Medicare statute and regulations prescribe a specific procedure for filing reimbursement claims and for appealing reimbursement decisions with which the provider disagrees. The primary appellate forum is the Provider Reimbursement Review Board ("PRRB" or "Board"), a statutorily created administrative tribunal. These cases concern the jurisdiction of the PRRB to consider out-of-time applications for reimbursement of costs.

The hospitals sought review of a decision by the fiscal intermediary, the initial reviewer of reimbursement claims, not to award certain reimbursements. The Board denied review, finding that it lacked jurisdiction because the claims were not made within the time required by regulation. This decision was then appealed to the United States District Court for the District of Columbia which held that the Board must assert jurisdiction over the claims. The Secretary of Health and Human Services (HHS) now seeks review of that decision. In addition, this court sua sponte raised the question of whether subject matter jurisdiction existed. For the reasons

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

discussed below, we find that this court does have subject matter jurisdiction to review the decision of the PRRB, and that the PRRB correctly held that it lacked jurisdiction to review the decision of the intermediary. Accordingly, we reverse the judgment of the district court.

## BACKGROUND

### The Medicare Statute and Regulations

The Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. (1976), created a comprehensive system of health care for the elderly and infirm. Under the Medicare Act, certain institutions known as "providers" are reimbursed for the cost of the services they provide to qualified Medicare beneficiaries. All of the hospitals in these actions are providers by virtue of having filed agreements with the Secretary of Health and Human Services. 42 U.S.C. § 1395cc(a)(1).

Providers receive reimbursement for the "reasonable costs" of the services provided. 42 U.S.C. § 1395x(v)(1)(A). Although the Secretary may directly reimburse a provider, the more common method of reimbursement is for the provider to appoint a "fiscal intermediary" which acts as the Secretary's agent for the purpose of reviewing claims and awarding reimbursement. 42 U.S.C. § 1395h. A fiscal intermediary is usually a private insurance company. Here it was appellant Blue Cross and Blue Shield of Tennessee, Inc.

At the end of its fiscal year, a provider submits to the intermediary a cost report upon which reimbursement is based. Medicare regulations require that this cost report be filed within three months of the end of the fiscal year, although a provider may be granted an additional 30 days for good cause. 42 C.F.R. § 405.453(f)(2)(i), (ii) (1981). The intermediary then audits the cost report and determines and awards the appropriate reimbursement.

Under certain circumstances, the intermediary may permit a provider to amend a filed cost report. However, the availability of this procedure, known as "reopening," is very limited and will depend upon whether new and material evidence has been submitted, or a clear and obvious error was made, or the determination is found to be inconsistent with the law, regulations and rulings, or general instructions. Medicare Intermediary Manual (HIM–13) § 2631.2. Moreover, a determination not to reopen is not appealable. 42 C.F.R. §§ 405.1885(c), 405.1889.

If the provider disagrees with the reimbursement award, it may appeal to the PRRB. Under the statute, the PRRB will review determinations of the fiscal intermediary only if (1) the provider has filed a timely cost report, (2) the amount in controversy is $10,000 or more, and (3) the appeal is filed within 180 days. 42 U.S.C. § 1395oo(a); 42 C.F.R. Part 405, Sub. R. Following review by the PRRB, the Secretary may then review the decision and reverse, affirm, or modify. 42 U.S.C. § 1395oo(f)(1). If a provider is dissatisfied with a final decision of the Board or Secretary, it may seek review by suit in federal district court. *Id.*

### Facts

The facts of this case are not in dispute. Appellees, the Hospital Corporation of America (HCA) and 33 hospitals which HCA owns, timely filed cost reports for the periods ending December 31, 1973 and December 31, 1974. These reports claimed reimbursement for "home office" costs—costs which HCA incurred as the home office of the hospital chain. However, neither the home office cost reports nor the hospitals' cost reports included claims for stock option costs or federal income taxes.

Following submission of the cost reports, the fiscal intermediary notified the hospitals of their Medicare reimbursement. In addition, HCA, as home office, was notified of its reimbursement. HCA then timely filed an appeal to the PRRB, challenging six adjustments to the 1973 cost report made by the intermediary.

On March 16, 1978, prior to the PRRB's decision on the challenges, HCA requested

permission from the intermediary to amend its 1973 and 1974 cost reports to include costs incurred in connection with HCA's stock option plan and federal income taxes. This was the first time HCA had made such a claim.[1] The intermediary responded by requesting a position paper in support of the claims, and, on April 26, 1978, HCA filed its position paper.

On June 30, 1978, the fiscal intermediary informed HCA that it would not reopen the cost reports. In a rather detailed decision entitled "Notice of Refusal to Reopen," the intermediary addressed the merits rather than the timeliness of the claim and found that the costs HCA claimed were not reimbursable under the Medicare regulations. HCA then sought to appeal this decision to the PRRB, not by filing a de novo appeal but rather by seeking to add these issues to the appeal that was already pending. The PRRB rejected this approach, finding that it lacked jurisdiction to review the new claims.

### The Decision Below

On February 23, 1979, HCA filed an action in the United States District Court in Tennessee where the home office is located. Soon after, a second action was filed by HCA's subsidiary hospitals in the District of Columbia. The cases were then consolidated in the District of Columbia.

On May 29, 1981, the district court held that the Board must assert jurisdiction over the providers' claims to reimbursement for employee stock option plan costs and federal income tax expenses. *Athens Community Hospital, Inc. v. Schweiker,* 514 F.Supp. 1336 (D.D.C.1981). In so ruling, the court held that "where the intermediary is presented with a new question, whether it is within a 'request to reopen' or in a newly submitted cost report, Congress clearly requires that the PRRB have jurisdiction to oversee and resolve the dispute between the intermediary and the provider." *Id.* at 1340. The opinion also evinced a clear con-

cern that review be available, particularly in view of what the court perceived as a congressional intent favoring such review.

### DECISION

#### Subject Matter Jurisdiction

At the outset, it is necessary to consider whether this court has subject matter jurisdiction over the issue presented by this case. In the district court, the government initially contended that subject matter jurisdiction was lacking. In its reply memorandum, however, the government withdrew this argument because "recent formulations of agency policy" now favored the exercise of jurisdiction by district courts in cases where the jurisdiction of the PRRB was at issue. The district court accepted the government's change of position and found that subject matter jurisdiction existed.

This issue was not raised by the parties on appeal. But the court was concerned whether jurisdiction existed, particularly since one rationale for exercising such jurisdiction was the agency's policy. It is axiomatic that subject matter jurisdiction may not be waived, Fed.R.Civ.P. 12(h); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 474 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), and that courts may raise the issue sua sponte. *Save the Bay, Inc. v. U. S. Army,* 639 F.2d 1100, 1102 (5th Cir. 1981). *See generally* C. Wright & A. Miller, *Federal Practice and Procedure* § 1393 (1969). Accordingly, the court requested the parties to brief the issue. After careful review of the briefs and of 42 U.S.C. § 1395oo (f)(1)—the key Medicare jurisdictional statute—the court concludes that subject matter jurisdiction does exist.

The Social Security Act sets forth various means for obtaining judicial review of disputes arising under the Act. Numerous cases have held that under section 405(h) and other sections of the Act,[2] the exercise

---

1. The only explanation provided for the more than four-year delay in submitting the claims was inadvertence. Memorandum of Points and Authorities in Support of Plaintiffs' Motion for

Summary Judgment at 2, 9 (filed Mar. 19, 1980).

2. Section 405(h) provides:

of federal jurisdiction is circumscribed by, and limited to, whatever jurisdiction exists under the specific Medicare provisions. *See, e.g., United States v. Erika, Inc.,* —— U.S. ——, 102 S.Ct. 1650, 72 L.Ed.2d 12 (U.S.1982); *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Association of American Medical Colleges v. Califano,* 569 F.2d 101 (D.C.Cir.1977). Appellee nevertheless argues that jurisdiction exists under sections 1331 and 1361 because the issue involved is procedural in nature. While we question this argument, *see John Muir Memorial Hospital, Inc. v. Califano,* 457 F.Supp. 848 (N.D.Cal.1978); *Cleveland Memorial Hospital, Inc. v. Califano,* 444 F.Supp. 125, 127 (E.D.N.C.1978), *aff'd,* 594 F.2d 993 (4th Cir. 1979), we find it unnecessary to reach this issue because we believe jurisdiction does exist under a provision of the Social Security Act—42 U.S.C. § 1395*oo* (f)(1).

Section 1395*oo* (f)(1) provides in pertinent part as follows:

A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any *final decision* of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any *final decision* by the Board or of any reversal, affirmance, or modification by the Secretary is received.... Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be

tried pursuant to the applicable provisions under chapter 7 of Title 5, notwithstanding any other provisions in section 405 of this title.

42 U.S.C. § 1395*oo* (f)(1) (Supp. IV 1980) (emphasis added). The first issue before the Court, therefore, is whether a decision by the PRRB not to exercise jurisdiction is a "final decision" sufficient to establish jurisdiction.

This question has previously arisen in two cases. In *Cleveland Memorial Hospital, Inc. v. Califano,* 444 F.Supp. 125 (E.D.N.C.1978), *aff'd,* 594 F.2d 993 (4th Cir. 1979), the court held that it had jurisdiction to review a decision by the PRRB declining to hear a case on the basis of lack of PRRB jurisdiction. In support of its decision, the court first reasoned that if a refusal by the PRRB to exercise jurisdiction were not reviewable, "the PRRB could effectively preclude any judicial review of its decisions simply by denying jurisdiction of those claims that it deems to be non-meritorious." *Id.* at 128. Second, the court reasoned by analogy to 28 U.S.C. § 1291 (1976), which grants courts of appeals the power to review "final decisions" of the district courts. Under that statute, dismissals for lack of jurisdiction have consistently been understood as "final decisions." *Id.* The court thus concluded that the decision by the PRRB not to exercise jurisdiction was a "final decision" within the meaning of 42 U.S.C. § 1395*oo* (f)(1).[3]

In *John Muir Memorial Hospital, Inc. v. Califano,* 457 F.Supp. 848 (N.D.Cal.1978), as here, the question was whether the PRRB had jurisdiction to hear an appeal from an intermediary's decision. The court held that jurisdiction was lacking. *John Muir,* however, is easily distinguished from *Cleveland Memorial* and this case because 42 U.S.C. § 1395*oo* (f)(1) jurisdiction was not

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or em-

ployee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

3. Although the Fourth Circuit affirmed the district court's decision, this jurisdictional issue was not before the appeals court.

available to the court.[4] Thus, the only issue before the court in *John Muir* was whether jurisdiction existed under 28 U.S.C. § 1331 or § 1361—a proposition the court rejected.[5]

This court holds that a decision by the PRRB refusing to exercise jurisdiction is, for the purpose of 42 U.S.C. § 1395oo (f)(1), a final decision sufficient to permit judicial review. The reasoning of the court in *Cleveland Memorial* is especially persuasive. Moreover, while the Medicare Act and, in particular, 42 U.S.C. § 1395oo (f)(1) are structured so as to limit judicial review, there is nothing in either the statute or the legislative history which suggests that such review is limited exclusively to substantive issues. Thus, if the threshold requirements of 42 U.S.C. § 1395oo (f)(1) are met, a court has jurisdiction to review a decision by the PRRB that it lacks jurisdiction to review a determination of the fiscal intermediary.[6]

*PRRB Jurisdiction*

■ Having decided that the court has jurisdiction to review the decision of the PRRB, we now hold that the PRRB's decision not to exercise jurisdiction was correct. The claims at issue were not initially included in the cost reports. Under the regulations, claims must be filed within three months of the close of a fiscal period, with a maximum extension of 30 days. 42 C.F.R. § 405.453(f)(2)(i) and (ii). If a provider fails to file claims in this period, there is essentially no procedure for filing additional claims.[7] The only possible device for filing amendments to the cost report is to seek to reopen the proceeding; however, reopening is permitted only on very narrow grounds. Under the regulations,

> [a] determination of an intermediary . . . may be reopened with respect to findings on matters at issue in such determination or decision, by such intermediary . . . either on motion of such intermediary . . . or on the motion of the provider affected by such determination or decision to revise any matter in issue at any such proceedings . . . .

42 C.F.R. § 405.1885(a). This regulation has been further defined by the Medicare Intermediary Manual which states:

> *Reopening Final Determination on Cost Reports.* Whether or not the intermediary will reopen a determination, otherwise final, will depend upon whether *new and material evidence* has been submitted, or a clear and obvious error was made, or the determination is found to be inconsistent with the law, regulations and rulings, or general instructions. Information submitted in support of an amended cost report or the audit findings on a previously unaudited cost report (§ 2004) could provide new and material evidence on which to base a reopening.

Medicare Intermediary Manual § 2631.2 (HIM–13) (emphasis added). Reopening is

---

**4.** This basis of jurisdiction was not available to the court in *John Muir* because the provider failed to timely file its appeal. Under the statute, a decision by the PRRB not to hear a case on this basis is, by definition, not a "final decision." *See John Muir*, 457 F.Supp. at 853.

**5.** These two decisions apparently engendered some confusion because the Secretary recently proposed a new regulation which would modify 42 C.F.R. § 405.1873 by adding the following language:

> (b) A decision of the Board that it lacks jurisdiction to consider a matter shall be treated as a final decision of the Board. The Board shall issue written notice of such a decision to the parties in accordance with § 405.1871. Such a decision may be reviewed by the Administrator under § 405.-1875, and by the courts (see § 405.1877).

45 Fed.Reg. 9953, 9959 (1980). The amendment has not been adopted, perhaps because of doubts about the Secretary's power to create subject matter jurisdiction for the courts.

**6.** The Secretary also challenges HCA's standing to bring this action. We find this argument without merit, particularly in view of the consolidation of the actions, and accordingly go on to reach the central issue of whether the PRRB has jurisdiction to review the intermediary's decision.

**7.** The Medicare regulations provide that amendments to the cost report "may be permitted or required as determined by the Health Care Financing Administration [HCFA]." 42 C.F.R. § 405.453(f). HCFA has in turn determined that the only permissible amendments will be those permitted under the reopening provisions.

thus allowed only to hear new *evidence* —not new *claims*. Moreover, under 42 C.F.R. § 405.1885(c), jurisdiction to reopen "rests exclusively with that administrative body that rendered the last determination or decision"; in other words, if the fiscal intermediary decides not to reopen, the decision is not appealable to the PRRB. *See also* 42 C.F.R. § 405.1889 (right to appeal to PRRB exists only after there has been a revision after a proper reopening).

In this case, it is undisputed that HCA sought reopening to present new claims. It is also undisputed that these claims were not timely filed. Accordingly, the fiscal intermediary could have refused to reopen on that ground. Had it done so, its decision would clearly not have been reviewable.[8] The intermediary, however, refused to reopen on the ground that the claims were without merit.

■ The district court thought that the intermediary's refusal to reopen because of its view of the merits rather than for lateness in filing constituted a "waiving by silent acquiescence [of] any objection to timeliness . . . ." 514 F.Supp. at 1339. Three considerations lead us to reject this reasoning. First, it is doubtful that the intermediary had authority to waive an absolute requirement imposed by the Secretary's regulations. Second, the intermediary's conclusion that the claims had no substance was entirely unnecessary as a basis for the refusal to reopen and it is inappropriate to hold that such a gratuitous explanation in these circumstances serves to remove the time bar. Finally, regardless of the reasons given, a decision not to reopen, as already noted, lies within the exclusive jurisdiction of the administrative body that rendered the last decision and is therefore not reviewable. 42 C.F.R. §§ 405.1885(c), 405.1889; Medicare Intermediary Manual § 2631.2 (HIM–13). Thus, whether the case is viewed as an appeal from a refusal to reopen or as an appeal from a refusal to

hear time-barred claims, the PRRB was correct in declining to exercise jurisdiction.

■ On appeal, however, the appellees suggest an additional basis for jurisdiction which was not present in the district court's decision.[9] HCA argues that the PRRB may consider new claims in the context of an otherwise perfected and proper appeal from the original reimbursement decision. In support of this argument, HCA looks to three sources. First, HCA contends that the statute and regulations permit the Board to consider a claim de novo in the context of a pending appeal. Specifically, HCA argues that 42 U.S.C. § 1395*oo*(d), 42 C.F.R. § 405.1869, and Medicare Intermediary Manual § 2624.6 (HIM–13) provide a basis for jurisdiction. A close examination of these sections, however, indicates that none of them authorizes the PRRB to review new claims.

> Under 42 U.S.C. § 1395*oo*(d),
>
> [t]he Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on *matters covered by such cost report* . . . even though such matters were not considered by the intermediary in making such final determination.

*Id.* (emphasis added). This provision is clearly limited to revisions of matters covered by the original cost report and does not authorize the Board to consider new claims. Such a conclusion is reinforced by 42 U.S.C. § 1395*oo*(a) which similarly limits PRRB review to matters raised by the original cost report.

Nor do the Medicare regulations provide a basis for such review. The language in 42 C.F.R. § 405.1869 is virtually identical to that in 42 U.S.C. § 1395*oo*(d) discussed above and the scope of the regulation is accordingly limited to "matters covered by [the original] cost report." *Id.* The provi-

---

8. The purely factual issue of whether the claims were timely filed would be reviewable, however.

9. Indeed, appellees rely primarily on this additional argument, virtually conceding at oral argument and in its Post-Hearing Supplemental Brief that this is not a reopening case.

sion of the Medicare Intermediary Manual is more problematic. Under section 2624.6 of the Manual,

> the Board may introduce or consider *new issues or aspects of a determination* with which it is dissatisfied at any time after a request for hearing is made.... The Board may, at any time prior to the mailing of notice of decision, give notice that specified new issues will be considered even though they were not put in issue earlier (at the time of the request for hearing or at the time of the initial determination).

*Id.* (emphasis added). This language is concededly broader than the regulations and the statute. Nevertheless, the scope of this standard remains limited to "new issues or aspects *of a determination*" and does not include new claims which are totally unrelated to the claims presented in the initial determination. Moreover, we note that had the Secretary intended to permit the Board to consider de novo *claims* in the context of a pending appeal, it would have been more natural to use the word "claims" rather than "issues." Thus, while the language of the Intermediary's Manual regulation may be mildly ambiguous, the regulation seems directed at new issues which relate to validly appealed claims and does not authorize the PRRB to review new claims.[10]

The second source to which HCA looks is past PRRB rulings which consider de novo claims in the context of a pending review. *See, e.g., St. Joseph Medical Center v. Blue Cross Association/Blue Cross of Southern California*, PRRB Hearing Dec. No. 81–D13, [1981–2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 30,925. The Secretary concedes that in certain instances the PRRB

has conducted such review. However, the Secretary points out that this occurred following the initiation of a new policy in 1980 which permitted PRRB consideration of de novo claims in two limited circumstances: (1) where providers wanted to include a claim based on return-on-equity capital, a new reimbursement concept, and (2) where the provider can demonstrate good cause for the failure to include the claim.

These actions of the Board are irrelevant here. First, the decision of the Board not to accept jurisdiction over the claims at issue was made in 1978 and was thus consistent with the then-existing regulations. Second, under our interpretation of the statute and regulations, we seriously doubt whether the Board has the power to expand its jurisdiction to consider de novo claims in any circumstances. Third, even if the Board does have this power, it is clear that the claims in question do not fall within the limited exceptions carved out by the Board.

The third source to which HCA looks is case law. HCA contends that both *St. James Hospital v. Harris*, 535 F.Supp. 751 (N.D.Ill.1981), and *Memorial Hospital v. Schweiker*, 4 Medicare & Medicaid Guide (CCH) ¶ 31,603 (M.D.Fla. Oct. 20, 1981), support the exercise of PRRB jurisdiction over de novo claims. These cases, however, seem to us distinguishable. In both, the hospitals had initially made "self-disallowances" of certain costs, which means that they reported those costs to the fiscal intermediaries but, because of regulations which seemed to bar such claims, did not ask reimbursement. They later sought reimbursement for these costs in the context of PRRB appeals on other issues, and the courts held that, as to

---

10. Appellees also assert that the agency's interpretation of its regulations (1) is not entitled to deference, (2) exceeds the authority conferred under statute, and (3) is so arbitrary and inconsistent as to deprive it of validity. We note at the outset that, while the court agrees with the agency's interpretation of the statute and regulations, this conclusion is based on the language of the statute and regulations rather than on deference to the agency's interpretation. We add, however, that the Medicare area is one in which Congress has delegated broad discretion to the Secretary and the Board. *See*

*American Medical Int'l, Inc. v. Secretary of Health, Education, and Welfare*, 466 F.Supp. 605, 611 (D.D.C.1979), *aff'd*, 677 F.2d 118 (D.C. Cir.1981). HCA also suggests that upholding the decision of the PRRB would limit review in a fashion that exceeds the Secretary's authority and might raise constitutional issues. The premise of this contention is that claims on the merits must always be heard. The argument is unsound. We hold only that claims must be made in a timely fashion, a requirement that is hardly unique in our administrative and judicial systems.

some costs, the PRRB had jurisdiction. These decisions are distinguishable because the costs were timely disclosed to the intermediary. By making such disclosure, the provider gives the intermediary an opportunity at that point to decide that reimbursement is proper. The provider also puts the Medicare system on notice that the costs exist and may be claimed at some stage if it later becomes likely that such costs should be considered reimbursable. The providers' "self-disallowances" are thus analogous to a disallowance by the intermediary of costs claimed in the initial cost report. Review of self-disallowance claims in the context of an existing appeal is therefore not at all the same as the review of claims for costs not disclosed in the initial cost report, here not disclosed for a period of four years after that report. We believe this distinction sufficient to eliminate these cases as precedential support for appellees. We add, however, that we are not, in any event, bound by those decisions and would adhere to our conclusion even if the cases were not distinguishable.

The result we reach is reinforced by the policies which underlie the Medicare statutes and regulations in this area. A ruling that the PRRB has jurisdiction to hear new claims for reimbursement so long as an appeal as to other claims for the same fiscal year is pending before it would have deleterious results. First, giving the PRRB such jurisdiction could significantly reduce the role of the fiscal intermediary. Permitting de novo claims before the PRRB would deprive that body of the intermediary's analysis and conclusions and make the PRRB the tribunal of original jurisdiction, eliminating a tier of review, and possibly substantially slowing the reimbursement process for other providers. This procedure would also render virtually meaningless the time limits for the filing of cost reports established by Medicare regulations. Instead of being required to file within three months, with a maximum extension of 30 days, the provider could file new cost claims for as long as its appeal as to any claim was pending before the PRRB. In the past, appeals have sometimes pended there for three or more years. Second, allowing de novo claims at the PRRB level would generate baseless appeals to protect against the possibility that an overlooked cost might be found. This in turn would delay the disposition of meritorious appeals. These results would be contrary to the statutory and regulatory design meticulously worked out by Congress and the Secretary.

The judgment of the district court is reversed and the case is remanded with orders to dismiss plaintiffs' complaints.

*It is so ordered.*