ADAMS HOUSE HEALTH CARE,
et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendants.

No. C–83–3020 WHO.

United States District Court,
N.D. California.

Aug. 10, 1984.

Eugene Tillman, Pierson, Ball & Dowd, Washington, D.C., Stephen P. Oggel, Christison, Martin & Oggel, San Diego, Cal., for plaintiffs.

Joseph Russoniello, U.S. Atty., N.D. Cal., George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

This case, before the Court on cross-motions for summary judgment, concerns the statutory and regulatory scheme of the Medicare Act by which the government reimburses those who provide health care to Medicare recipients. The Court is asked to interpret the statute and regulations that allow a provider of services to obtain review by the Secretary of Health and Human Services ("the Secretary") of the amounts reimbursed to it.

In an opinion filed April 2, 1984, the Court granted the Secretary's motion for summary judgment and denied plaintiffs' motion. Plaintiffs then moved for reconsideration, contending that the Court based its decision on a mistaken apprehension of a fact crucial to the outcome of the case. Oral argument on the motion for reconsideration was heard on June 8, 1984. For the reasons following, the Court now grants the motion for reconsideration and also grants plaintiffs' motion for summary judgment; the Court vacates its earlier decision in favor of the Secretary and denies her motion for summary judgment.

## I

### A

Title XVIII of the Social Security Act, popularly known as the Medicare Act, 42 U.S.C. § 1395 *et seq.*, establishes a federally funded health insurance program that provides medical care to the aged and disabled. Skilled nursing facilities, such as plaintiffs in this case, participate in the program by entering into "provider agreements" with the Secretary, under which the facilities furnish services to Medicare beneficiaries. 42 U.S.C. § 1395x(j). Such facilities are referred to as "providers" in the statute and pertinent regulations. Pursuant to these agreements, the Secretary reimburses providers for the reasonable cost of caring for Medicare recipients. 42 U.S.C. §§ 1395f(b), 1395x(v); 42 C.F.R. §§ 405.401 *et seq.* The provider appoints a "fiscal intermediary," usually a private insurance company, that acts as the Secretary's agent for the purpose of reviewing and awarding reimbursement claims. 42 U.S.C. § 1395h. Providers are reimbursed at least monthly, subject to later adjustment. 42 C.F.R. § 405.405. At the end of the provider's fiscal year, it submits a cost report to the intermediary. 42 C.F.R. § 405.406. The intermediary then determines the actual amount of reimbursement to which the provider is entitled and issues a "notice of program reimbursement," or "NPR." If the actual reimbursable amount differs from the amount already paid for that period, an appropriate adjustment is made in later payments to recoup or repay the discrepancy. *Id.*

In general, when a provider is dissatisfied with the intermediary's final reimbursement decision and the amount in controversy is $10,000 or more, the provider may within 180 days of the receipt of the NPR request a hearing "with respect to such report" before the Provider Reimbursement Review Board ("the Board"). 42 U.S.C. § 1395oo(a). Alternatively, a group of providers, each of whom would individually be entitled to a hearing under § 1395oo(a), may request a group appeal if the matters in controversy in their cost reports involve a common question of fact or interpretation of the statute or regulations, and if the total amount in controversy is $50,000 or more. 42 U.S.C. § 1395oo(b).

The Board, a statutorily created body within the Department of Health and Human Services, may affirm, modify, or reverse reviewable reimbursement decisions of the fiscal intermediary. 42 U.S.C. § 1395oo. Within sixty days after a final decision of the Board, the Secretary may review the Board's decision on her own motion or on motion by the provider. 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1875. The provider may also obtain judicial review of a final decision by the Board or the Secretary, by filing a civil action within 60 days of the date of such a final decision. *Id.*

## B

Congress authorized the Secretary to promulgate regulations governing what costs incurred by the provider are reimbursable. *See* 42 U.S.C. §§ 1395hh, 1395x(v). The underlying dispute in this case, which is not before the Court, concerns plaintiffs' right to reimbursement pursuant to 42 C.F.R. § 405.429(a)(1)(i). That regulation provides:

"A reasonable return on equity capital invested and used in the provision of patient care is paid [to the provider] as an allowance in addition to the reasonable cost of covered services furnished to beneficiaries by proprietary providers."

This provision is in apparent conflict with the Medicare Provider Reimbursement Manual, which requires the provider to exclude from the computation of return on equity capital funds remaining in investment status for more than six months. Prov.Reim. Manual, Part I, § 1218.2. Further, in computing reasonable cost of services provided, otherwise allowable interest expenses must be reduced by the income from invested funds. 42 C.F.R. § 405.-419(b)(2)(iii). Thus, the reimbursement authorized by 42 C.F.R. § 405.429 is significantly reduced by the exclusions required in the Provider Reimbursement Manual, Part I, § 1218.2, and 42 C.F.R. § 405.-419(b)(2)(iii).

## C

Plaintiffs in this case are eighty-two skilled nursing facilities owned by Hillhaven Corporation. Certain administrative and management functions are carried out on behalf of plaintiffs through the Hillhave home office. The costs incurred by the home office are reimbursed by the Medicare program to plaintiffs using allocation methods prescribed in Medicare regulations and instructions. Plaintiffs' costs of providing services to Medicare beneficiaries are determined based on cost reports for each plaintiff and the Hillhaven Corporation home office, which are submitted on an annual basis. See Affidavit of R.L. Kearney, Reimbursement Manager for Hillhaven Corporation.

During the corporation's fiscal year ending May 31, 1981, plaintiffs, through the Hillhaven home office, had funds invested for more than six months in certificates of deposit, treasury bills, and similar notes. Plaintiffs filed their 1981 cost reports, complying with the rules governing the offset of interest income against allowable interest expense, and the exclusion of invested funds held for more than six months from the computation of return on equity capital. Plaintiffs did not object to the application of those rules to their cost reports at the time of filing. The fiscal intermediary issued NPRs to seventy-six of the plaintiffs between February 16, 1982 and June 18, 1982.[1]

On March 26, 1982, plaintiffs requested the intermediary's permission to amend their 1981 cost reports to include invested funds held longer than six months in the computation of the return on equity capital. The intermediary did not allow the amendment.

Plaintiffs then filed a group appeal before the Board requesting a hearing on the

---

1. Six members of the Hillhaven Group had not received NPRs before plaintiffs sought PRRB review. As to those six, the Board declined to review their cost reports because receipt of an NPR is a jurisdictional prerequisite to Board review. The correctness of that decision has not been challenged.

validity of the simultaneous application of the Medicare rules discussed above, claiming that the simultaneous application of those provisions results in undercompensation of plaintiffs for the reasonable cost of providing medical services to Medicare beneficiaries as required by the Medicare statute and regulations. *See* 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 405.401 *et seq.*

On April 19, 1983 the Board declined to review plaintiffs' claim. The Board held that the providers had not met the jurisdictional requirement for review because they had not claimed the disputed amounts in their cost reports. The Board stated that its jurisdiction depended on the provider having made an overt disclosure to the intermediary of its posture on a particular issue, which ordinarily would be evidenced by claiming reimbursement for the item in the cost report. *See* Administrative Record, 5–7. Plaintiffs argued unsuccessfully that claiming reimbursement for the disputed amounts would have put them in violation of the Medicare regulations.

Plaintiffs next requested that the Administrator of the Health Care Financing Administration, on behalf of the Secretary, reverse the Board's decision. On June 2, 1983, the Administrator declined to review the case. The Board decision thus became the final decision of the Secretary and is now before this Court for review.

## II

■ This Court's jurisdiction over this case is based on 42 U.S.C. § 1395oo(f)(1) of the Medicare Act, which provides in pertinent part:

"Providers shall have the right to obtain judicial review of any *final decision* of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action * * *. * * * Such action shall be brought in the district court of the United States for the judicial district in which the provider is located * * *."

(Emphasis added.)

A Board decision not to exercise jurisdiction is a "final decision" under § 1395oo(f)(1). *Athens Community Hospital Inc. v. Schweiker*, 686 F.2d 989, 993–94 (D.C.Cir.1982), *citing Cleveland Memorial Hospital, Inc. v. Califano*, 444 F.Supp. 125 (E.D.N.C.1978), *aff'd*, 594 F.2d 993 (4th Cir.1979). Although the parties in this case have not raised the issue, the Court notes that if a refusal by the Board to exercise jurisdiction were not reviewable, "the [Board] could effectively preclude any judicial review of its decisions simply by denying jurisdiction of those claims that it deems to be non-meritorious." *Cleveland*, 444 F.Supp. at 128. The *Cleveland* court analogized the jurisdictional question to 28 U.S.C. § 1291, which grants courts of appeal the power to review "final decisions" of the district courts. Under that statute, dismissals for lack of jurisdiction have consistently been understood as "final" and hence, reviewable, decisions. *See, e.g., W.E. Hedger Transportation Corp. v. Ira S. Bushey & Sons*, 155 F.2d 321 (2d Cir.), *cert. denied*, 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635 (1946).

This Court finds the jurisdictional rationale in *Athens* and *Cleveland* persuasive. Because the Board's refusal to exercise jurisdiction over plaintiffs' claims is a final decision pursuant to 42 U.S.C. § 1395oo(f)(1), this Court has jurisdiction to entertain plaintiffs' appeal of the Board's refusal to review their claims.

## III

### A

The precise issue before this Court is whether the Board properly refused to review the fiscal intermediary's determination of the reimbursements due plaintiffs for the 1981 fiscal year. In other words, did the Board lack jurisdiction to hear plaintiffs' appeal from the intermediary's decision?

The statute granting the Board jurisdiction to hear appeals from final decisions of the fiscal intermediary is 42 U.S.C. § 1395oo(d), which provides as follows:

"The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination."

It is clear from the statute that the Board's jurisdiction turns on whether a matter was "covered" by a cost report. *See generally Athens Community Hospital, supra,* 686 F.2d at 997 (D.C.Cir.1982).

In this case the Secretary takes the position that an item is "covered by the cost report" within the meaning of 42 U.S.C. § 1395oo(d) only if the provider has affirmatively *claimed* it for reimbursement. Plaintiffs are not entitled to Board review, the Secretary insists, because they "self-disallowed" these items, rather than claiming reimbursement for them.

### B

By "self-disallowance" a provider recognizes that an incurred cost is not reimburseable under the Medicare regulations. A provider could either not record the self-disallowance amount on the cost report, or could record the expenditure and then subtract it out of the claim for reimbursement. Plaintiffs chose the latter method.

Hillhaven Corporation, the home office for the individual plaintiffs in this case, submitted to the fiscal intermediary a "home office" cost report that recorded *all* home office costs, including an amount for reasonable return on equity capital invested and used in the provision of patient care. Adjustments were then made to the total equity capital cost by offsetting investment income against allowable interest expense and by excluding the funds invested for more than six months. These exclusions, or disallowances, were recorded on the cost report. *See* Affidavit of R.L. Kearney and exhibits thereto.[2]

The reporting technique used by plaintiffs is in accord with the Secretary's regulations and instructions governing the filing of cost reports. Section 2150.3 of the Provider Reimbursement Manual (HIM-15) requires the home office of a provider chain to submit a cost report identifying its total operating costs. This report *"must delete all costs which are not allowable in accordance with program instructions." Id.* Although plaintiffs believed that the rules limiting the amount reimbursable for return on equity capital were inconsistent, a claim for full reimbursement would have violated the regulations.

### C

The Secretary does not contest the fact that plaintiffs reported the disputed costs in the fiscal 1981 cost reports. She does, however, contend that this Court should ignore the evidence of what was in the cost report, which was presented by plaintiffs to the Court in litigation affidavits. Instead, the Secretary would have the Court confine its review to the Administrative Record, which purports to contain those documents before the Board and gen-

---

**2.** Mr. Kearney's affidavit states:

> In preparing the Medicare cost reports for plaintiffs and the Hillhaven Corporation home office for the fiscal year ended May 31, 1981, plaintiffs followed the requirements on reductions in interest expense and exclusions from net equity capital, notwithstanding their position that the requirements were mutually exclusive. Each individual cost report identified the interest expense incurred by that plaintiff. Pursuant to the Medicare regulations and instructions, the Hillhaven Corporation, by adjustment to the home office cost report, reduced allowable home office costs by the amount of the interest income from the invested funds. This reduction in cost contained in the home office cost report was reflected in the share of home office costs allocated to each plaintiff on its cost report. Further, each individual cost report identified that plaintiff's net equity capital. Pursuant to the Medicare instructions, the Hillhaven, by adjustment on the home office cost report, reduced allowable home office equity capital contained by the amount of invested funds. This reduction in equity capital contained in the home office cost report was reflected in the share of home office equity allocated to each plaintiff."

Affidavit of R.L. Kearney, ¶ 8.

erated by the Board when it declined to review plaintiffs' claims. The Administrative Record as filed with the Court does not contain plaintiffs' fiscal 1981 cost report.

Defendant in taking this position relies on *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). That case holds that a court reviewing an administrative decision must review the whole record upon which the agency's decision was based. *Id.* at 419–20, 91 S.Ct. at 825. That decision does *not* hold that the Court may consider only the agency record.

> "[S]ince the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence it may be necessary for the District Court to require some explanation in order to determine if the Secretary was acting within the scope of his authority * * * *"

*Id.* at 420, 91 S.Ct. at 825. Although the administrative record does not contain the cost report, this Court cannot determine whether the Board "acted within the scope of [its] authority" without considering the affidavits containing pertinent sections of that report. The Court, therefore, finds it appropriate and necessary to consider plaintiffs' 1981 cost report in order to determine whether the Board erred in refusing jurisdiction over plaintiffs' claims.[3]

### D

The central disagreement between the parties remains to be addressed: Does the jurisdiction of the Board depend on plaintiffs' having actually claimed reimbursement, or is it enough that they recorded the total cost of equity capital and then self-disallowed certain amounts as required by the disputed regulations? The Secretary contends, despite her own regulations discussed above, that plaintiffs should have claimed the full amount for reimbursement. This interpretation of 42 U.S.C. § 1395oo(d) unacceptably strains the language of the statute and has been rejected by those courts that have considered the question.

The statute conferring jurisdiction on the Board to review the fiscal intermediary's reimbursement decisions is clear on its face. The Board may review "matters *covered* by such cost report * * * * even though such matters were *not considered* by the intermediary in making such final determination." 42 U.S.C. § 1395oo(d)(emphasis added). The statute does not require that the provider *claim* the disputed amount, only that it be "covered" by the report. Indeed, claiming an item for reimbursement in contravention of a regulation disallowing that item may subject the provider to charges of fraud.[4] The conclusion

3. Assuming that the Board denied jurisdiction because the record before it was incomplete, the Court points out that it was the Board's duty to request such information as would allow it to determine its own jurisdiction. The Provider Reimbursement Review Board Manual provides that:

> "Where the hearing request does not provide sufficient information with respect to the identification of issues, the amount in controversy, etc., the provider *will* be given an opportunity to perfect the appeal. The Board *will* advise the provider in writing of the deficiencies and allow 30 days from the date of such letter to respond with the appropriate information."

PRRB Hearing Manual § 1100.2. Instead of complying with its own mandatory rules, the Board *sua sponte* dismissed the appeal for lack of jurisdiction. *See* Administrative Record at 5. If the Board was in doubt as to whether the items for which review was sought were covered by the cost report, the proper response would

have been a request for the providers to submit the relevant cost report. *See Alexandria Hospital v. Heckler*, 586 F.Supp. 581 (E.D.Va.1984) (remanding action to Board to take more evidence on the question whether disputed costs were covered by the cost reports).

4. The impossible position providers are put in by the Secretary's understanding of the procedures necessary to obtain Board jurisdiction is demonstrated by *Our Lady of Lourdes Memorial Hospital v. Schweiker*, No. 80–CV–226 (N.D.N.Y., July 26, 1982), CCH Medicare and Medicaid Guide, ¶ 32,154. After regulations governing reimbursement for physician emergency standby fees were changed, the provider continued to claim reimbursement and objected to the new regulations. The provider was warned by the intermediary that if it continued to claim reimbursement under the former system it would be subject to fraud charges pursuant to 42 U.S.C. § 1395nn. At the end of the next fiscal year the provider recorded the emergency room standby

that an item need not be claimed is buttressed by the last clause of the section, which explicitly allows the Board to review matters not considered by the intermediary.

In a case on all fours with this litigation the Seventh Circuit defined the scope of Board jurisdiction. *St. Mary of Nazareth Hospital v. Department of Health and Human Services*, 698 F.2d 1337 (7th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983). *St. Mary of Nazareth* was a consolidated appeal of two district court cases, *St. Mary of Nazareth*, 531 F.Supp. 419 (N.D.Ill.1982), and *St. James Hospital v. Harris*, 535 F.Supp. 751 (N.D.Ill.1981). The question of Board jurisdiction was raised in the appeal from the lower court's decision in *St. James Hospital.*

During the 1977 fiscal year, St. James Hospital installed bedside telephones for all its patients including those on Medicare.

"In their annual report to the fiscal intermediary and in order to comply with the Secretary's regulations St. James entered the cost of this 'personal comfort item'[5] on worksheet A–8 of the 1977 Medicare Costs Report. The effect of this worksheet (A–8) entry acted as a 'self-disallowance' of the overall patient telephone costs ($17,000) and thus the question of the telephone costs was not presented to the fiscal intermediary for review."

*Id.* at 1340–41. The hospital recognized that telephone costs had been found by the Secretary to be a nonreimburseable "personal comfort item" and so self-disallowed the expense on the cost report, just as plaintiffs did in this case.

Also as in the case at bar, the Board refused to review St. James Hospital's claim because the hospital had itself disallowed the telephone costs, the Secretary taking the position that the statute required that a claim for reimbursement be made to the intermediary as a prerequisite to Board jurisdiction. *Id.* at 1346. The circuit rejected the Secretary's restrictive reading of § 1395oo(d):

"This section vests broad authority in the Provider Reimbursement Review Board to review the finding of the fiscal intermediary and make any adjustment to the cost reports the Board deems necessary. As the statute itself expressly states, the Board may consider any matter 'even though such matters were not considered by the intermediary in making such final determination.'"

*Id.* at 1346. The court then held that the Board had jurisdiction to review St. James Hospital's claims, because the self-disallowance procedure resulted in the claims being covered in the cost report. *Accord Our Lady of Lourdes Memorial Hospital, supra.*[6]

Similar reasoning was followed in *Athens Community Hospital, supra*, 686 F.2d 989 (D.C.Cir.1982). The court noted that by recording a "self-disallowance" in the cost report, the provider gives the intermediary an opportunity to decide that reimbursement is proper and notifies the Medicare system that the costs exist and may be claimed in the future. The fact of the self-disallowance is "analogous to a disallowance by the intermediary of costs claimed in the initial cost report. Review of self-disallowance claims in the context of an existing appeal is therefore not at all

---

costs, but self—disallowed them in accordance with the intermediary's instructions. Shortly thereafter, the regulations were again changed, reverting to the former means of reimbursing emergency room costs. The provider then asked the Board to review its reimbursements, pursuant to the new regulations. The Board refused, stating that it had no jurisdiction because the costs were not "claimed" in the cost report. The District Court reversed, finding that because the self-disallowance was recorded in the cost report, the item was "covered" therein

and so reviewable pursuant to 42 U.S.C. § 1395oo(d).

5. "Personal comfort items" are not reimbursable. *See* 42 U.S.C. § 1395y(a)(6). The provider in *St. James* argued unsuccessfully that bedside telephones provided therapeutic benefits and were incorrectly categorized by the Secretary as a "personal comfort item."

6. See discussion of *Our Lady of Lourdes Memorial Hospital*, at note 4, *supra.*

the same as the review of claims for costs not disclosed in the initial cost report * *." *Id.* at 997.[7]

The Secretary argues that *St. James* and *Our Lady of Lourdes* are not on point because in those cases the providers had in some manner brought the disputed items to the fiscal intermediaries' attention, in addition to self-disallowing the costs. Because "there was a history of conflict on the disputed costs between the provider and the intermediary," the Secretary contends that those decisions should be distinguished from the case at bar. See Def.Opp. to Plf. Motion for Reconsideration, at 5-6. Although the district court's decision in *St. James* mentioned that conflict, (535 F.Supp. at 755), the appellate court did not, (698 F.2d at 1340-41); neither court held or even intimated that Board jurisdiction required anything more than recording the disallowance in the cost report. Similarly, the district court in *Our Lady of Lourdes* reported the history of the provider's dispute with the intermediary over emergency room costs (*see* note 4, *supra*), but did not suggest that Board jurisdiction turned on the existence of that dispute.

■ Although this Court is not bound by *St. James* or *Our Lady of Lourdes,* the reasoning in those decisions is persuasive. The statute makes no further demands on a provider beyond including the costs in the report. If the provider did not make an appropriate disallowance, it would clearly be out of compliance with the regulations. Thus, to follow the Secretary's interpretation of the statute, the provider would have to choose between claiming a nonreimbursable expense and risking possible fraud charges, or losing the right to challenge the disallowance before the Board. Such a result is clearly not what Congress intended. The Court, therefore, holds that an item is "covered by" the cost report within the meaning of 42 U.S.C. § 1395oo(d) if a

"self-disallowance" of the cost is reported in the cost report, and that the Board has jurisdiction to review disputes regarding such disallowed costs.

Accordingly,

IT IS HEREBY ORDERED that

(1) Plaintiffs' motion for summary judgment is granted; and

(2) The Board shall accept jurisdiction over plaintiffs' request that their fiscal 1981 cost reports be reviewed with respect to the application of the regulations governing reimbursement of reasonable return on equity capital pursuant to 42 C.F.R. § 405.429(a).

---

7. In *Athens Community Hospital v. Schweiker,* 686 F.2d 989 (D.C.Cir.1982) the court found that the Board did not have jurisdiction over a provider's claim, where the provider had entirely omitted any mention of the item for which it later sought Board review. The court distinguished *St. James* because that hospital had made self-disallowances, and commented that that factual distinction was "sufficient to eliminate [*St. James*] as precedential support for appellees." *Id.* at 997.