# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 7, 2010        Decided June 24, 2011

No. 10-5115

AUBURN REGIONAL MEDICAL CENTER, ET AL.,
APPELLANTS

v.

KATHLEEN SEBELIUS, SECRETARY, DEPARTMENT OF HEALTH
AND HUMAN SERVICES,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-02075)

*Robert L. Roth* argued the cause and filed the briefs for appellants.

*M. Roy Goldberg*, *Christopher M. Loveland*, and *Brian M. Daucher* were on the brief for *amici curiae* Hospice Advantage, et al. in support of appellants.

*Jeffrey A. Lovitky* was on the brief for *amicus curiae* Quality Reimbursement Services in support of appellants.

*Stephanie R. Marcus*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief

were Ronald C. Machen Jr., U.S. Attorney, and *Mark B. Stern*, Attorney. *Samantha L. Chaifetz*, Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Since 1983, Medicare has used a prospective payment system to reimburse hospitals for their inpatient operating costs. These payments are based on predetermined, nationally applicable rates and are subject to various adjustments. One such adjustment is the disproportionate share hospital (DSH) payment, which provides an additional reimbursement to hospitals that serve large numbers of low-income patients. A hospital's DSH payment depends on its "DSH percentage," a figure that the Center for Medicare & Medicaid Services (CMS) must calculate. The DSH percentage varies based on the number of Medicare beneficiaries entitled to Supplementary Security Income, a federal low-income supplement established by the Social Security Act.

This case stems from the discovery in an unrelated case that CMS had paid hospitals less than they were due because it had miscalculated the DSH percentage for fiscal years 1993-1996. *See Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20 (D.D.C. 2008). The appellants in this case, a group of hospitals that receive DSH payments, filed claims with the Provider Reimbursement Review Board (PRRB) in 2006 seeking full payments for the fiscal years 1987-1994. Appellants acknowledged that they filed their claim more than a decade after the deadline for challenging payments, but argued that the limitations period should be equitably tolled

because CMS knowingly and unlawfully failed to disclose that the DSH payments had been understated.

The PRRB held that it was without authority to toll the limitations period, making appellants' claim untimely and beyond the jurisdiction of the PRRB. Appellants then filed suit in the district court, which held that it also lacked jurisdiction in this matter because the PRRB's determination was not a "final decision." The district court further held that the statute does not allow for equitable tolling. We take jurisdiction pursuant to 28 U.S.C. § 1291 and reverse and remand.

I

We consider first whether the PRRB's dismissal of appellants' claims for lack of jurisdiction was a "final decision." The Medicare statute grants "[p]roviders . . . the right to obtain judicial review of any final decision of the [PRRB] . . . by a civil action commenced within 60 days of the date on which notice of any final decision by the [PRRB] . . . is received." 42 U.S.C. § 1395oo(f). There is no question that this appeal was brought within sixty days. The only question is whether the PRRB's decision was final.

To understand the Secretary's argument, a word of explanation is needed about how providers receive Medicare reimbursements and how they can challenge those they think are wrong. Each year, Medicare providers submit cost reports to fiscal intermediaries, who then determine the amount of Medicare reimbursement due, which is announced in a Notice of Provider Reimbursement (NPR). If a provider is dissatisfied, it may appeal that determination to the PRRB but must do so within 180 days of the NPR. 42 U.S.C. § 1395oo(a). According to the Secretary and the district court, the Board's dismissal of an untimely claim is not a final

decision. We fail to see how this could be the case. The district court thought this was our holding in *Athens Community Hospital, Inc. v. Schweiker*, 686 F.2d 989 (D.C. Cir. 1982), but it was not. In *Athens*, we held that "*if the threshold requirements of 42 U.S.C. § 1395oo(f)(1) are met*, a court has jurisdiction to review a decision by the PRRB that it lacks jurisdiction to review a determination of the fiscal intermediary." 686 F.2d at 994 (emphasis added). But § 1395oo(f)(1) only requires that "a civil action [be] commenced within 60 days" of the PRRB's "final decision." It says nothing about the 180-day limitations period.

The Secretary's confusion seems to stem from our reference to *John Muir Memorial Hospital, Inc. v. Califano*, 457 F. Supp. 848 (N.D. Cal. 1978)), in *Athens*. We stated there that "jurisdiction was not available to the court in *John Muir* because the provider failed to timely file its appeal. Under [§ 1395oo(f)(1)], a decision by the PRRB not to hear a case on this basis is, by definition, not a 'final decision.'" 686 F.2d at 994 n.4. The Secretary reads this statement to suggest that a PRRB conclusion that it lacks jurisdiction over an untimely claim is not a final decision subject to judicial review. But that was not our point. In *John Muir*, the provider, without having appealed the fiscal intermediary's final determination to the PRRB within 180 days, went straight to the district court. It did not go there arguing the PRRB was wrong to deny jurisdiction. Rather, it argued the court could review the intermediary's decision on the merits pursuant to the grant of general federal question jurisdiction under 28 U.S.C. § 1331, even if a timely claim was never pressed before the PRRB. *See John Muir*, 457 F. Supp. at 852-53. The court disagreed, holding that it could only review cases on the merits that were filed within sixty days of a final decision by the PRRB. *See id.* The *John Muir* court did not hold that a dismissal for want of jurisdiction is not a final

decision on that issue. And with good reason. Such a dismissal is final in any sense of the word. It is not pending, interlocutory, tentative, conditional, doubtful, unsettled, or otherwise indeterminate. It is done.

Indeed, we took jurisdiction in *Athens* after explaining that courts have "jurisdiction to review a decision by the PRRB declining to hear a case on the basis of lack of PRRB jurisdiction." 686 F.2d at 993. If it were otherwise, "the PRRB could effectively preclude any judicial review of its decisions simply by denying jurisdiction of those claims that it deems to be non-meritorious." *Id.* (quoting *Cleveland Mem'l Hosp., Inc. v. Califano*, 444 F. Supp. 125, 128 (E.D.N.C. 1978), *aff'd*, 594 F.2d 993 (4th Cir. 1979)) (internal quotation marks omitted). Accordingly, courts of appeals in comparable situations have consistently understood dismissals for lack of jurisdiction as "final decisions." *See id.* (analogizing to 28 U.S.C. § 1291, where courts have consistently understood dismissals for lack of jurisdiction as final decisions). This approach accords not only with common sense but also with the relevant regulations. *Cf.* 42 C.F.R. § 405.1836(e)(2) ("A Board dismissal decision under paragraph (e)(1) [which concerns dismissals for 'lack of Board jurisdiction'] of this section is final and binding on the parties. . . ."). We reaffirm, then, that a decision of the PRRB denying jurisdiction is a final decision subject to judicial review.

## II

The hospitals' claims, brought over a decade after the statute of limitations had expired, may only be heard by the PRRB if the limitations period can be equitably tolled. As we recently reiterated, "It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling

would be inconsistent with the text of the relevant statute." *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 529 (D.C. Cir. 2010) (internal quotation marks omitted). In general, "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), and the presumption of equitable tolling is not disturbed by the fact that Medicare is a government benefits program, *see, e.g.*, *Scarborough v. Principi*, 541 U.S. 401, 422 (2004).[1]

The district court rejected equitable tolling on the ground that "plaintiffs have proffered nothing suggesting that . . . Congress intended to authorize equitable tolling for provider claims." *Auburn Reg'l Med. Ctr. v. Sebelius*, 686 F. Supp. 2d 55, 70 (D.D.C. 2010). Subsequently, *Menominee* made clear that the appropriate inquiry is just the opposite: whether there was good reason to think Congress did *not* want equitable tolling.

---

[1] We have also required that the injury be "of a type familiar to private litigation." *Menominee*, 614 F.3d at 529 (quoting *Chung v. DOJ*, 333 F.3d 273, 277 (D.C. Cir. 2003)). Following the Supreme Court's recent decision in *Holland v. Florida*, 130 S. Ct. 2549 (2010), it is not entirely clear how similar the claim must be to "private litigation" for equitable tolling to apply. The Court in *Holland* applied the presumption of equitable tolling to a limitations period in the Antiterrorism and Effective Death Penalty Act without first identifying a private-litigation equivalent, stating simply that "a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" *Id.* at 2560. In any event, the contours of that requirement need not be determined now, as this case is "of a type familiar to private litigation" because it is analogous to a contract claim.

This presumption in favor of equitable tolling holds here. The statute specifies that "[a]ny provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report . . . if . . . such provider files a request for hearing within 180 days after notice of the intermediary's final determination." 42 U.S.C. § 1395oo(a). This language is similar to other statutes that have been held to permit equitable tolling. *See Menominee*, 614 F.3d at 529-31 (finding equitable tolling permissible where statute required all claims to "be submitted within 6 years after the accrual of the claim"); *see also Irwin*, 498 U.S. at 94-96 (finding equitable tolling permissible where statute stated that "[w]ithin thirty days of receipt of notice of final action. . . an employee . . . may file a civil action"); *Kirkendall v. Dep't of Army*, 479 F.3d 830, 837-42 (Fed. Cir. 2007) (en banc) (finding equitable tolling permissible where statute provided that "within 60 days after the date on which [the complaint] is filed, the complainant may elect to appeal . . . except that in no event may any such appeal be brought . . . before the 61st day after the date on which the complaint is filed").

The Secretary argues that the presumption is rebutted here, relying upon *United States v. Brockamp*, 519 U.S. 347 (1997). In *Brockamp*, the Supreme Court found that the statute of limitations for filing tax refund claims, IRC § 6511, cannot be equitably tolled. But the Court in *Brockamp* did so by pointing to a number of factors not present here. First, the Court observed that ordinarily, "limitations statutes use fairly simple language," citing as an example 42 U.S.C. § 2000e-16(c), which provides that a suit must be filed "[w]ithin 90 days of receipt of notice of final [EEOC] action." 519 U.S. at 350. By contrast, the Court reasoned, the language in IRC § 6511 is "not simple," but instead "sets forth its limitations in a highly detailed technical manner," *id.*, and "reiterates its

limitations several times in several different ways," *id.* at 351.[2] Also unlike the statute at issue here, IRC § 6511 "sets forth explicit exceptions to its basic time limits," *id.*, including special time-limit rules for "refunds related to operating losses, credit carrybacks, foreign taxes, self-employment taxes, worthless securities, and bad debts." *Id.* at 351-52. In the detailed landscape of exceptions before the Court in *Brockamp*, there was no reference to equitable tolling—a fact the Court found particularly conspicuous given that "[t]ax law . . . is not normally characterized by case-specific exceptions reflecting individualized equities." *Id.* at 352. These reasons, "taken together, indicate[d] . . . that Congress did not intend courts to read other, unmentioned,

---

[2] IRC § 6511 begins by stating that a "[c]laim for . . . refund . . . of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed . . . within 2 years from the time the tax was paid." IRC § 6511(a). It reiterates that "[n]o credit or refund shall be allowed or made after the expiration of the period of limitation prescribed . . . unless a claim for . . . refund is filed . . . within such period." *Id.* § 6511(b)(1). It again states that "[i]f the claim was filed by the taxpayer during the 3-year period . . . the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return . . . ." *Id.* § 6511(b)(2)(A). Later, § 6511 provides that "[i]f the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." *Id.* § 6511(b)(2)(B). As the *Brockamp* Court noted, the tax code also "reemphasizes the point when it says that refunds that do not comply with these limitations 'shall be considered erroneous,' and specifies procedures for the Government's recovery of any such 'erroneous' refund payment." 519 U.S. at 351 (citations omitted).

open-ended 'equitable' exceptions into the statute that it wrote." *Id.*

The statute in this case is different enough from the one in *Brockamp* for us to conclude that the presumption of equitable tolling has not been rebutted. First, the language in § 1395oo resembles the "fairly simple language" in § 2000e-16(c) that the *Brockamp* Court said clearly allowed equitable tolling. *Compare* 42 U.S.C. § 1395oo(a) (allowing "any provider of services which has filed a required cost report within the time specified in regulations [to] obtain a hearing . . . if . . . such provider files a request for hearing within 180 days after notice of the intermediary's final determination") *with id.* § 2000e-16(c) (stating that a suit must be filed "[w]ithin 90 days of receipt of notice of final [agency] action"). Second, although the statute of limitations here has a "good cause" exception that lasts no longer than three years, that exception is in the regulations, not the statute, *see* 42 C.F.R 405.1841(b) (2007), and does not bear on whether Congress rebutted the presumption of equitable tolling by enacting a complex set of exceptions to the statute of limitations. In any event, that one exception is unlike the numerous "highly technical" exceptions in the Internal Revenue Code, and is not "reiterate[d] . . . several times in several different ways." *Brockamp*, 519 U.S. at 350-51. Furthermore, contrary to the Secretary's suggestions, the Court's focus in *Brockamp* was not the complexity of tax law per se, but rather the complexity of the provisions governing whether and when a claim could be filed. *Menominee*, 614 F.3d at 530 ("[F]ocus on the regulatory scheme as a whole is misplaced. The *Brockamp* Court did not concern itself with the complexity of the Tax Code as a whole, but the complexity of the time limitations found in § 6511."). It is true that as a general matter, the Medicare statute, like the Internal Revenue Code, is quite complex. But unlike the tax

code, the Medicare statute does not create a detailed Jenga tower of deadlines and exceptions that equitable tolling might topple. Rather, its timing scheme is straightforward and readily amenable to tolling.

Given that the factors emphasized in *Brockamp* do not apply to the facts presented here, and without any other reasons for rebutting the presumption of equitable tolling, we find that equitable tolling is available under § 1395oo(a). Whether tolling is appropriate in this particular case, however, is a different question that cannot be answered without further factual development. That question is for the district court on remand.

Appellants also raise alternative arguments about the availability of mandamus and general federal question jurisdiction in the event that equitable tolling is not available. Given our disposition, we need not reach those arguments today.

### III

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*