ATHENS COMMUNITY HOSPITAL, INC., et al.

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellant.

HOSPITAL CORPORATION OF AMER-ICA, A Tennessee Corporation

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellant.

Nos. 81-1807, 81-1814.

United States Court of Appeals, District of Columbia Circuit.

On Petition for Rehearing.

Decided Aug. 28, 1984.

Susanne M. Lee, Atty. Dept. of Health and Human Services, Washington, D.C., with whom Juan A. del Real, Gen. Counsel, Lynne K. Zusman, Deputy Gen. Counsel and Henry R. Goldberg, Atty., Dept. of Health and Human Services, Washington, D.C., were on the brief, for appellants. Kenneth M. Raisler, Valerie K. Schurman and Royce C. Lamberth, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellants.

James C. Pyles, Washington, D.C., with whom Robert A. Klein, Washington, D.C., was on the brief, for appellees. Patrick K. O'Hare, Washington, D.C., also entered an appearance for appellees.

Before ROBINSON,[*] Chief Judge, BORK, Circuit Judge, and LARSON,[**] Senior District Judge for the United States District Court of Minnesota.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

These consolidated actions were brought by a group of hospitals seeking reimbursement under the Medicare program for certain income tax and employee stock option costs incurred in the provision of health care. In our initial opinion, we upheld the decision of the Provider Reimbursement Review Board ("PRRB" or "Board") that it did not have jurisdiction over the hospitals' challenge to the intermediary's refusal to reimburse the hospitals for those costs. *Athens Community Hospital, Inc. v. Schweiker*, 686 F.2d 989 (D.C.Cir.1982). We held that where the costs had not been claimed and the narrow grounds for reopening the intermediary's determination were not satisfied, the PRRB could not consider new claims, even in the context of an otherwise perfected and proper appeal from the original reimbursement decision. Our decision was based on the language of 42 U.S.C. § 1395*oo*(d) (1982) limiting the PRRB's review on appeal to "matters covered by [the original] cost report." 686 F.2d at 995, *quoting* 42 U.S.C. § 1395*oo*(d) (1976). The Hospital Corporation of America ("HCA"), the appellees, petitioned for rehearing, contending, *inter alia*, that "[o]nce a provider's cost report is before the Board," the PRRB has jurisdiction to

consider "any matters which relate to the cost report even if such matters were not specifically claimed or shown on the cost report." Supplemental Brief for Appellees on Petition for Rehearing at 6–7. After requesting two more rounds of briefing, we now issue this opinion modifying our original opinion in part.

## I.

Illuminating this intricate issue of statutory construction has taxed the resources of two panels of this court and many lawyers. Counsel for each party have briefed this issue at least four times. We appreciate counsels' untiring efforts to make clear what we have found to be a very difficult problem mired in a complex regulatory scheme. After considering various options, we have finally arrived at what we think is the most tenable reading of the statute. That reading is to a certain extent different from the one we adopted in our original opinion. Before describing the alternative readings and their relative merits, however, some background is necessary.

### A.

Hospitals are entitled to reimbursement from the government for the actual, reasonable costs of furnishing care to Medicare beneficiaries. 42 U.S.C. § 1395cc(a)(1) (1982); 42 U.S.C. § 1395x(v)(1)(A) (1982). Central to this reimbursement process— and the focus of the entire review procedure—is the annual cost report submitted by "providers" of Medicare services to "fiscal intermediaries."[1] Fiscal intermediaries are generally private insurance companies that contract with the Secretary of Health and Human Services to act as the Secretary's agent for the purpose of reviewing claims and awarding reimbursement. 42 U.S.C. § 1395h (1982). Here, the interme-

---

[*] Chief Judge Robinson took no part in the disposition of the petition for rehearing.

[**] Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Payments are made to providers at least monthly based upon estimates of the cost of

various services and projections of the number of Medicare patient days. 42 U.S.C. § 1395g (1982); 42 C.F.R. §§ 405.405, 405.454 (1983). This is done in order to avoid cash flow problems for providers. But the final determination of reimbursable costs is made on the basis of the costs claimed by providers in the year-end cost report. 42 C.F.R. § 405.406 (1983).

diary was Blue Cross and Blue Shield of Tennessee, Inc.

The cost report itself is a lengthy document consisting of numerous schedules, worksheets, and supplemental worksheets. We are informed that a cost report, when completed, is approximately three-quarters of an inch thick. Supplemental Brief for Appellants in Saint Mary of Nazareth Hospital Center at 7. Providers list on the worksheets costs that are added into the final figure for which they request reimbursement as well as many costs that are disclosed for the purpose of calculation only. For example, Worksheet A, entitled "Reclassification and Adjustment of Trial Balance of Expenses," lists several "non-reimbursable cost centers." As appellees admit, "it is clear that a provider does not claim reimbursement for all costs identified in a cost report." Second Supplemental Brief for Appellees on Petition for Rehearing at 7.[2]

Intermediaries review and audit the cost reports and then notify providers of the amount they believe the providers should be reimbursed by a Notice of Program Reimbursement ("NPR"). In the NPR the intermediary explains any audit adjustments made to the provider's cost report. 42 C.F.R. § 405.1803 (1983). Any provider that has filed a timely cost report "may obtain a hearing with respect to such cost report" if that provider

is dissatisfied with a final determination of the organization serving as a fiscal intermediary ... as to the amount of

total program reimbursement and due the provider for the items and services furnished to individuals for which payment may be made....

42 U.S.C. § 1395oo(a)(1)(A) (1982).[3] The appeal is heard by the PRRB, which is created by section 1395oo. The PRRB's jurisdiction—the crux of the dispute here—is set out in section 1395oo(d), which provides:

A decision by the Board shall be based upon the record made at [a] hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the Board, and shall be supported by substantial evidence when the record is viewed as a whole. The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

42 U.S.C. § 1395oo(d) (1982).

The regulations amplify the relevant procedures. Cost reports must be submitted within three months of the end of the accounting period involved, subject to a thirty-day extension. 42 C.F.R. § 405.453(f)(2) (1983). Amendments "to revise cost report information which has previously been submitted ... may be permitted or required as

2. Most troubling to this court was a determination of exactly how claims are made and whether there is a difference between claiming a cost and merely listing it. *See* Court's Order of August 30, 1983; Court's Order of May 22, 1984. This confusion was at least partially due to HCA's position that "an intermediary is made aware that a provider seeks reimbursement for a particular cost item only by performing an audit." Appellees' Response to Response of Appellant's to the Court's Order of August 30, 1983, at 2. HCA's extraordinarily helpful response to this court's order of May 22, 1984 has ended our confusion. As explained above, there is clearly a difference between listing a cost on the cost report and claiming reimbursement for a particular cost because the cost report lists both non-reimbursable and reimbursable costs. And to

the extent that the figures listed in the cost report are categories of costs and not particular cost items, HCA is correct in stating that only by auditing the report is an intermediary made aware of individual cost items. The essence of our holding today is that unless the provider includes a *category* of costs in its request for reimbursement, the intermediary is not obligated to determine whether reimbursement may be had for the cost items that make up that category.

3. In addition, the amount in controversy must be $10,000 or more and the provider must file a request for a hearing within 180 days of receiving the intermediary's final determination. 42 U.S.C. § 1395oo(a)(2), (3) (1982).

determined by the [Health Care Financing Administration]." *Id.* § 405.453(f).[4] The intermediary must base its reimbursement calculations on the cost report, *id.* § 405.-1803, and the scope of the PRRB's review of intermediary decisions is described in language that tracks the portion of section 1395*oo*(d) giving the PRRB the power to alter the intermediary's final determination "with respect to a cost report and to make any other modifications on matters covered by such cost report." *See* 42 C.F.R. § 405.1869 (1983).

## B.

The facts of this case are not in dispute and are set out in greater detail in our initial opinion. *Athens,* 686 F.2d at 991–92. Briefly, appellees, the Hospital Corporation of America ("HCA") and 33 hospitals owned by HCA timely filed cost reports for 1973 and 1974. It is undisputed that these cost reports did not include requests for reimbursement of certain stock option costs or federal income taxes. Petition for Rehearing at 7–8; Complaint ¶ 20. After receiving an NPR, HCA filed a timely appeal with the PRRB challenging a number of adjustments made by the intermediary to the 1973 cost report. Four years later, in 1978, prior to the PRRB's decision on appeal, HCA sought to amend its 1973 and 1974 cost reports to include stock option costs and federal income taxes. The intermediary treated HCA's request as one to reopen and denied it in a decision entitled "Notice of Refusal to Reopen." HCA then sought to appeal this decision to the PRRB, not by filing a *de novo* appeal but rather by seeking to add these issues to the already-pending appeal. As stated above, the PRRB held that it lacked jurisdiction to review the new claims.

## II.

Section 1395*oo*(d), the statute at issue here, can best be thought of as embodying two separate jurisdictional grants. First, the PRRB has "the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report." 42 U.S.C. § 1395*oo*(d) (1982). Second, the PRRB has the power "to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination." *Id.* Jurisdiction exists if the terms of either of these two clauses are satisfied. Each grant can be read a number of different ways. The most restrictive definition, which we arguably adopted in our original opinion, limits PRRB jurisdiction to items specifically claimed in the cost report. This reading does not consider an intermediary as having made a "final determination" over which the PRRB has jurisdiction unless the provider has expressly requested reimbursement for a cost. As to the second jurisdictional grant, a cost would not be considered a "matter covered by [the original] cost report," and the PRRB could not review the intermediary's refusal to reimburse the provider for that cost, unless the cost was listed on the original cost report and added into the final figure of reimbursement requested.[5]

A second way to interpret this statute would be to hold that the PRRB has jurisdiction over cost items that were somehow disclosed to the intermediary but were not included in the final figure requesting reimbursement. Under this reading, an intermediary's "final determination" would be reviewable as to all costs that the intermediary knew about or had reason to know about because the provider disclosed those costs in or with the cost report. Alterna-

---

**4.** Providers may ask the intermediary to reopen or allow it to amend its cost report. An intermediary decision not to reopen or to allow amendment is not reviewable. Medicare Intermediary Manual § 2632.1 (HIM–13). The reopening regulations are described in greater detail *infra* at 7–8.

**5.** This view would place as a ceiling on the amount of reimbursement possible the figure listed at line 73 of Worksheet E, Part III. See Exhibit B to Supplemental Brief of Department of Health and Human Services Submitted in Response to the Court's Order of May 22, 1984.

tively, a "matter" could be defined as any disclosed cost, not just costs that are claimed. To illustrate, HCA in this case submitted with its cost report a statement of income and expenses. That statement explicitly identified federal and state income taxes, but HCA did not at the time request reimbursement of those costs. HCA argues that because the intermediary knew about the income tax costs the PRRB has jurisdiction over the income tax issue.

There are, however, a few different kinds of disclosure. One is, for want of a better title (and because it is the language used by the Board), "overt disclosure-notice." *Mt. Zion Hospital Hill-Burton Group v. Blue Cross & Blue Shield*, No. 80–238G, mem. op. at 4 (P.R.R.B. Mar. 16, 1982). *See, e.g.*, Provider Reimbursement Review Board Supplemental Explanation for Denial of Jurisdiction, attached to Letter from PRRB to Director of Reimbursement for Humana, Inc., Leonard E. Verbeke, Re: Beverly Glen Hospital, Los Angeles, California, Provider No. 05–210, Case No. 83–475, F/Y/E (Aug. 31, 1980) ("When the provider files a cost report, it must either claim the particular cost or state its claim and disclose its position on an issue so the intermediary can consider and make a final determination."). A provider is said to have satisfied this requirement if it appends to its cost report a letter stating that it disagrees with the reimbursement regulations and believes that it is lawfully entitled to be reimbursed for certain items not added into the total reimbursement requested. A second type of disclosure is where a provider lists a particular cost item on the cost report but does not request reimbursement for that item because it believes that reimbursement is barred by the Medicare regulations. The "self-disallowance" cases fall into this category. *See, e.g., Memorial Hospital v. Heckler*, 706 F.2d 1130 (11th Cir.1983),

*cert. denied,* —— U.S. ——, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *Our Lady of Lourdes Memorial Hospital v. Schweiker*, No. 80–CV–226 (S.D.N.Y. July 26, 1982).[6] There is a third type of disclosure, a variant of the second. That is, where a cost was not listed on the cost report but was disclosed to the intermediary in some other manner (aside from overt disclosure-notice of an intention to request reimbursement on appeal). The income tax costs in this case fall into this category.

The most expansive reading of section 1395oo(d) would hold that the PRRB's jurisdiction extends to matters *not* disclosed to the intermediary through the cost report. This interpretation, adopted by the Seventh Circuit in *St. Mary of Nazareth Hospital Center v. Department of Health & Human Services*, 698 F.2d 1337 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983), is based upon the language in the second grant of authority allowing the Board to consider any matter "even though such matters were not considered by the intermediary in making such final determination." 698 F.2d at 1346, *quoting* 42 U.S.C. § 1395oo(d) (1976). As the Seventh Circuit *St. Mary* panel said, "since the statute allows the Board to consider matters outside of the cost reports, we hold the [PRRB] had the authority to consider whether [the undisclosed costs at issue] are reimbursable expenses under the Medicare Act." *Id.*[7]

HCA urges us to read the statute as does the Seventh Circuit but argues, alternatively, that we should hold that the PRRB can consider on appeal any cost disclosed in some way to the intermediary. We decline to adopt either of these two readings propounded by HCA. Instead, we hold that the PRRB has jurisdiction over costs that are specifically claimed—meaning that the provider requested reimbursement in a

---

6. In most of these cases, courts have held that the PRRB does have jurisdiction over these costs.

7. The Seventh Circuit in *St. Mary* did not discuss the first jurisdictional grant, which does not seem to support that court's conclusion.

Such support is lacking because an intermediary cannot be said to have made a "final determination ... with respect to a cost report" as to a matter never disclosed to an intermediary via a cost report.

timely manner—as well as those cost issues raised by a provider prior to the intermediary's issuance of the NPR.

### A.

In attempting to resolve this question, our most important guide is of course the language of the statute itself. We reject the Seventh Circuit's reading of the statute for it ignores and would make meaningless that part of the statute expressly limiting the PRRB's power to "affirm, modify, or reverse a final determination of a fiscal intermediary ... and to make ... revisions" to *"matters covered by [a] cost report."* 42 U.S.C. § 1395oo(d) (1982) (emphasis added). This leaves HCA's alternate reading: that an intermediary makes a "final determination" with respect to all costs disclosed to it when it awards reimbursement. Or, that a cost is a "matter covered by [the] cost report" if it is listed on the cost report at the time of submission but not claimed. We decline to construe the statute in this manner because this interpretation does not comport with the statutory scheme, would have adverse practical consequences, and conflicts with the reopening regulations as well as the agency's own interpretation of this statute.

The PRRB's jurisdiction, as defined by section 1395oo(d), must be read in light of the Board's functions as set out by section 1395oo(a). That section states that a provider "may obtain a hearing with respect to [a required] cost report" if a provider "is dissatisfied with a final determination of the ... fiscal intermediary." 42 U.S.C. § 1395oo(a) (1982). The subject of the hearing is plainly the cost report and the cost report is the subject of the "final determination." It would be anomalous, moreover, to say that a provider can appeal only when "dissatisfied" while allowing the provider to obtain review of an intermediary's refusal to reimburse the provider for

a cost it did not even claim. We do not think Congress intended to permit a provider to claim dissatisfaction based upon its own failure to request reimbursement of a cost item. If a provider is unhappy with the reimbursement the intermediary allowed in such a case, it is the fault of the provider and not of the intermediary. It simply is not plausible to contend that Congress has created a scheme where the provider can claim dissatisfaction and have recourse to an appeal procedure because the intermediary failed to read the provider's mind and anticipate all those things the provider would like to be reimbursed for, even though it did not request them.[8]

In addition to putting an irrational gloss on the statute, the alternate interpretation urged upon us by HCA would have significant adverse practical consequences. If no express claim for reimbursement were necessary, the PRRB would presumably be able to take jurisdiction of any cost item disclosed on a cost report in a manner that sufficiently informs the intermediary that a particular cost exists so that the intermediary is able to judge whether the cost is reasonable. Thus a provider could list every conceivable cost on its cost report, without claiming reimbursement, and hope that the intermediary will reimburse it for the reported but unclaimed costs, secure that it nevertheless will have until 180 days following the NPR to concoct some reasons to urge upon the PRRB for reimbursement of the unclaimed costs. Also, the provider would be able to claim reimbursement from the intermediary for costs on one basis and then to recharacterize its costs and seek reimbursement on a totally different basis, at a higher level, before the PRRB.

As we stated in our previous opinion, this kind of review would

> deprive [the PRRB] of the intermediary's analysis and conclusions and make the

---

**8.** The agency has accepted this argument as well:

> [T]he statutory language *does require* dissatisfaction with the Intermediary's final determination and for a controversy to exist ... the Provider must disclose its position on an issue

so the Intermediary can consider and make a final determination..... This is essential to Board jurisdiction.

*Mt. Zion,* mem. op. at 4–5 (emphasis in original).

PRRB the tribunal of original jurisdiction, eliminating a tier of review, and [have the effect of] possibly substantially slowing the reimbursement process for other providers. This procedure would also render virtually meaningless the time limits for the filing of cost reports established by Medicare regulations. Instead of being required to file within three months, with a maximum extension of 30 days, the provider could file new cost claims for as long as its appeal as to any claim was pending before the PRRB. In the past, appeals have sometimes pended there for three or more years. Second, allowing de novo claims at the PRRB level would generate baseless appeals to protect against the possibility that an overlooked cost might be found. This in turn would delay the disposition of meritorious appeals. These results would be contrary to the statutory and regulatory design meticulously worked out by Congress and the Secretary.

*Athens,* 686 F.2d at 997. *Cf. Adams House Health Care, et al. v. Heckler,* 4 Medicare & Medicaid Guide (CCH) ¶ 33,953, at 9261 (N.D.Cal. Apr. 2, 1984) ("Without benefit of the intermediary's conclusions, the Board would assume a role different from that contemplated by lawmakers when the Medicare statutes were enacted."); Reply Brief for Appellees on Petition for Rehearing of June 21, 1984 at 4 ("Appellees concede that there is a legitimate governmental interest to finalizing reimbursement decisions...."}.

HCA does not deny the potential effects of the construction they would give the statute; in fact, "[a]ppellees concede that its construction of the PRRB's jurisdiction might theoretically permit these results." Second Supplemental Brief for Appellees on Petition for Rehearing at 23. HCA believes, however, "that Congress' mandate in Section 1395*oo*(d) that the PRRB review matters not considered by the intermediary reflects a determination by Congress that

the benefit of permitting broad PRRB jurisdiction to ensure proper reimbursement outweighs the potential that the cost reporting system will be abused" in this manner. *Id.* We read this part of the statute differently, and our construction of this clause is set out below. *See infra* pp. 9–10. But absent explicit congressional direction, we decline to read this statute in a way that would have the effect of defeating so much of the statutory scheme.

Aside from being inefficient, the scheme HCA envisions is also inconsistent with the reopening regulations provided by regulation. First, if specific claims were not required, an intermediary's denial of a reopening request often could not be final, contrary to 42 C.F.R. § 405.1885(c) (1983). In fact, HCA concedes this in arguing that "because Appellees appealed the intermediaries' determinations of the amounts due Appellees for the periods covered by Appellees' cost reports within the prescribed 180 day period, the intermediaries' determinations with respect to those cost reports did not become final for the purposes of the reopening regulation." Second Supplemental Brief for Appellees on Petition for Rehearing at 27–28. The effect of this would be that PRRB review of a matter would not be precluded when an intermediary refused a provider's request for reopening as to a cost not claimed so long as the 180-day time limit for PRRB review had not expired. This, of course, would eviscerate the finality provision of the regulations. Second, the reopening procedure reflects a system geared toward continual narrowing of the issues. Reopening is apparently issue-specific: the regulations provide that a reimbursement determination "may be reopened with respect to findings on *matters at issue* in such determination." 42 C.F.R. § 405.1885(a) (1983) (emphasis added).[9] For a "matter" to be "at issue," the intermediary must have resolved the issue adversely to an actual claim by the provider.

---

**9.** Reopening is permitted by an intermediary only if new and material evidence has been submitted, or a clear and obvious error was made, or the previous determination is incon-

sistent with the law, regulations, and rulings or general instructions. *Athens,* 686 F.2d at 994, *citing* Medicare Intermediary Manual (HIM–13) § 2631.2.

Moreover, if the intermediary does reopen and revise the determination with respect to matters at issue, "such revision shall be considered a separate and distinct determination" for purposes of PRRB review. 42 C.F.R. § 405.1889 (1983). We take this to mean that only the matters revised are open to review. If, as HCA suggests, matters need not be specifically claimed before the PRRB can review them, then reopening with respect to one matter would permit the provider to contest before the PRRB any matter in the entire cost report.

■ That the regulations are inconsistent with the reading of a statute advanced by HCA is not dispositive, of course. But where the statute is unclear (to put it mildly in the context of this case), we should not construe the statute in a way that would invalidate a series of regulations promulgated by the agency charged with administering that statute.

Finally, this is the interpretation that the PRRB has adopted.[10] In *Mt. Zion Hospital*, the Board fully endorsed the reasoning in our prior opinion and found that "there is no jurisdictional authority to accept any of the Provider's claims where the Provider failed to claim such costs in its cost report...." Mem. op. at 3. Citing section 1395oo(a), the Board held that the "statut[e] ... certainly indicate[s] that a provider must have made an overt disclosure-notice of its posture on a particular issue which ordinarily would be evidenced by claiming reimbursement for the particular item on the cost report." Mem. op. at 4. Continuing, the Board said:

The regulations clearly require that as a condition precedent the provider must have claimed the cost on its filed cost report to give rise to any controversy. Without any notice of a claimed cost on a cost report, the intermediary is precluded from considering the matter and making any final determination for that particular item which especially applies to self-disallowed costs. The intermediary's final determination is a statutory prerequisite for Board (or judicial) jurisdiction. Thus, the Board's jurisdiction flows from the intermediary's NPR with respect to the filed cost report, and the disputes arising from costs claimed in the cost report.

*Id.* at 4–5.[11] *Mt. Zion Hospital,* evidently, was not the first time that the Board took this position, as evidenced by the Board's explanation for its denial of jurisdiction in the following cases. *See,* Provider Reimbursement Review Board Supplemental Explanation for Denial of Jurisdiction, attached to Letter from PRRB to Director of Reimbursement for Humana, Inc., Leonard E. Verbeke, Re: Rancocas Valley Hospital, Willingboro, New Jersey, Provider No. 31–0061, Case No. 83–695, F/Y/E (Sept. 1980 & 1981), and Letter from PRRB to Director of Reimbursement for Humana, Inc., Leonard E. Verbeke, Re: Beverly Glen Hospital, Los Angeles, California, Provider No. 05–210, Case No. 83–475, F/Y/E (Aug. 31, 1980), and Letter from PRRB to Treasurer of Arnot-Ogden Memorial Hospital, Elmira, New York, Provider No. 33–0090, Case No. 82–109, F/Y/E (Dec. 31, 1978).[12]

10. HCA contends that the PRRB's interpretation of the statute is entitled to no weight because the Board has in the past reviewed *de novo* claims. Petition for Rehearing at 10–11. We repeat what we said in our earlier opinion—"under our interpretation of the statute and regulations, we seriously doubt whether the Board has the power to expand its jurisdiction to consider de novo claims in any circumstances." *Athens,* 686 F.2d at 996.

11. HCA correctly points out that the PRRB's decision in *Mt. Zion* relied primarily on section 1395oo(a) and did not adequately address the problem created by the part of section 1395oo (d) allowing the PRRB to consider matters not

considered by the intermediary. Our interpretation of that language is set forth below, and we think that it solves the problem of reconciling the two seemingly contradictory parts of section 1395oo(d).

12. In each of these cases the Board held that it lacked the jurisdictional authority to review certain issues because: the provider's cost reports did not claim the costs at issue; the intermediary had not accepted amended cost reports on the issues; and, the NPR's had not included any denials or adjustments of costs pertaining to the issues. In all three of the cases the providers had failed to request reimbursement for certain costs on the cost report; neither did the provid-

## III.

It is true that the statute gives the PRRB power to consider matters "not considered by the intermediary in making [its] final determination" [13] and that our reading could be attacked on the ground that it has the effect of nullifying the PRRB's power to consider these matters. This raises the primary obstacle to interpreting this statute—how can "matters" have been "covered by [a] cost report" but not have been "considered by the intermediary"? Because the cost report by its very nature tells the intermediary which costs are claimed, implicit in an intermediary's every determination of a final reimbursement figure is consideration of everything the provider requested. The amount requested is either awarded or it is not, but a decision is made as to all that is expressly claimed.

 Having carefully and exhaustively pondered this question, we have concluded that there is only one way of reading the statute that does give effect to both clauses of section 1395oo(d). That is to interpret the statute as allowing the PRRB to revise aspects of the reimbursement calculation not actually contested by the provider, and possibly not considered by the intermediary (because not claimed for reimbursement by the provider), when such revision is necessary to accommodate other PRRB revisions of matters that were claimed by the provider, decided adversely by the intermediary, and then contested by the provider to the PRRB. The provider, however, is allowed to appeal only such adverse decisions of the intermediary. Because this is the only plausible reading of this section that does not have the effect of rendering one part or the other meaningless, we believe that it is proper for us to adopt it.

This interpretation can best be illustrated by referring to the facts of the companion case, *St. Mary of Nazareth Hospital v. Schweiker*, 718 F.2d 459, 461–63 (D.C.Cir. 1983).[14] There, the hospitals did not include labor/maternity patients in their routine inpatient count. They contended that the regulation requiring such counting was irrational and contrary to the statute. Alternatively, they argued that the labor/maternity area is a special care unit. Because this was an alternative argument, however, the hospitals did not fill out the remainder of their cost reports in a manner consistent with the special care unit theory. Had the PRRB accepted the alternative argument, section 1395oo(d) would give it authority to bring the entire reimbursement calculation into conformity with the determination that the labor/maternity unit is a special care unit, even though these other aspects of the cost report were not (and perhaps could not have been) challenged directly by the hospitals.

ers append to the cost report any overt statement that they believed, contrary to HHS regulations or the intermediary's instructions, that they were entitled to reimbursement for the costs not claimed.

13. This provision is supplemented by section 2624.6 of the Medicare Part A Intermediary Manual (HIM–13), which provides that

[t]he Board has the authority to affirm, modify, reverse, or otherwise revise, in whole or in part, an intermediary's determination reflected in [an NPR] .... In addition, the Board may introduce or consider new issues or aspects of a determination with which it is dissatisfied at any time after a request for a hearing is made.

14. In that case, when the intermediary reopened the cost report of one of the hospitals involved in the group appeal, that hospital sought to introduce matters unrelated to those the intermediary had agreed to reconsider on reopening. Over the intermediary's objection, the PRRB determined that it had jurisdiction. The Board accepted the hospital's argument that "since the Provider's cost report was reopened, the Provider was entitled to make any claim for additional reimbursement at that time." *St. Mary*, 718 F.2d at 474, *quoting* PRRB Case No. 79–78G, Decision at 2. The Deputy Administrator reversed. The District Court did not discuss the question of the PRRB's jurisdiction and the panel in *St. Mary* withheld judgment regarding PRRB jurisdiction over the hospital's claims until the rehearing petition in this case was disposed of finally. The panel in *St. Mary* is today issuing a decision which follows our rationale, holding that the PRRB did not have jurisdiction to consider the matters unrelated to those the intermediary agreed to reconsider on reopening.

■ Interpreting the statute in this manner also leads us to the conclusion that the PRRB has jurisdiction over those items put into dispute by the provider at the time the cost report is filed. As noted above, providers generally do this by appending to the cost report a statement that they are entitled to reimbursement of a particular cost. In fact, in *St. Mary of Nazareth Hospital Center*, 71 of 72 hospitals did just that: despite a regulation instructing intermediaries to include labor/delivery room patients in the inpatient count, they all declined to follow that instruction and placed the matter in issue, thereby preserving their rights to appeal.[15] And since 1979 the Medicare program has had a formal procedure by which providers could do just this: preserve appeal rights by including the disputed costs in their allowable costs and disclosing the existence of such costs to the Medicare intermediary. *See* Provider Reimbursement Manual ("HIM–15") § 2425.1. Our original opinion was mistaken to the extent that it may have precluded such a reservation of rights by providers.[16]

IV.

■ Having stated all this, we can now dispose of the case before us. HCA concedes that it did not expressly claim the income tax or the stock option costs. Petition for Rehearing at 7–8; Complaint ¶ 20. And HCA did not inform the intermediary that it believed that it was entitled to be reimbursed for these costs until long after the NPR had been issued.[17] At best, HCA's claim with respect to the income tax costs can be characterized as a "self-disal-

lowance"; its claim with respect to the stock option costs is clearly not even that, for HCA contends only that it was "directly related" to a category of cost in issue. Petition for Rehearing at 5, 7. As such, the PRRB was correct in holding that it did not have jurisdiction to consider these costs because the intermediary was never given the opportunity to make a final determination about them. Any dissatisfaction on the part of HCA must be with its own failure to claim these costs in a timely fashion.

For the reasons stated above, we affirm our previous determination that HCA may not recover the income tax and stock option costs that it failed to claim. Our prior opinion is hereby modified to the extent that it is inconsistent with what is set forth above.

---

**15.** This belies HCA's contention that limiting PRRB jurisdiction to costs actually claimed for reimbursement would subject providers to possible criminal or administrative sanctions if they were to pursue cost report issues. 42 U.S.C. § 1395nn(a) (1982) is directed at knowing and willful falsehoods, not overt identification to an intermediary of costs for which the provider believes reimbursement is due in order to preserve a right of appeal.

**16.** We note that the Medicare reimbursement methodology for inpatient hospital services was changed in the Social Security Amendments of

1983, Pub.L. No. 98–21, 97 Stat. 65. Reimbursement for such services, effective with respect to periods beginning after September 30, 1983, will not be based on costs, but on a fixed price per case depending upon the illness being treated. Thus, the importance of the cost reporting process will in the future be greatly diminished.

**17.** The reason HCA failed to request reimbursement for these costs, HCA admits, was its own inadvertence. Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment at 9.