ADAMS HOUSE HEALTH CARE, Adrian-Hillhaven Convalescent Center; Alta Vista Healthcare; Alvarado Convalescent and Rehabilitation Hospital; Anaheim-Hillhaven Convalescent; Andrew House Health Care; Asheville-Hillhaven Rehabilitation and Convalescent Center; Bancroft House Health Care; Beverly West Convalescent Hospital; Birchwood Terrace Health Care; Birmingham-Hillhaven Convalescent Center; Blueberry Hill Health Care; Boca Raton Convalescent Center, et al., Plaintiffs-Appellees,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellant,

BOARD OF TRUSTEES OF the LELAND STANFORD JUNIOR UNIVERSITY; Stanford University Hospital, Plaintiffs-Appellees,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellant.

Nos. 85–1512, 86–1872.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1986.

Decided May 18, 1987.

Robert J. Aamoth, Washington, D.C., for plaintiffs-appellees in No. 85–1512.

Sarah Willis Wilcox, Washington, D.C., for defendant-appellant in No. 85–1512.

Rodney Johnson and Edmundo J. Moran, Stanford, Cal., for plaintiffs-appellees in No. 86–1872.

Jerry Bassett, San Francisco, Cal., for defendant-appellant in No. 86–1872.

Before NORRIS, BEEZER and BRUNETTI, Circuit Judges.

BEEZER, Circuit Judge:

The parties present an unsettled question of statutory construction: may a Medicare provider claim certain costs in a proceeding before the Provider Reimbursement Review Board when the provider included but failed to claim such costs in its annual Medicare cost report? In these consolidated cases, the Board held it had no power to consider reimbursement items not expressly claimed by the providers in their cost reports. The district court remanded both cases, directing the Board to accept jurisdiction over disputes concerning such reimbursement items. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## I

## BACKGROUND

### A. *The Medicare Program*

The Medicare program is set forth in subchapter XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (1982). Part A of the program, under which these cases arise, authorizes federal reimbursement for hospital care provided to the elderly and disabled. 42 U.S.C. § 1395c–1395i–2. Until recently, a health care "provider" (*e.g.* a hospital) submitted annual cost reports to a "fiscal intermediary" (usually a private insurance company) for review; the fiscal intermediary acted as an agent of the Secretary of Health and Human Services. The intermediary audited the cost report and issued a Notice of Program Reimbursement with an explanation of any audit adjustments or disallowed costs.[1] If the provider was not satisfied, the statute provided an avenue of administrative appeal to the Provider Reimbursement Review Board ("Board") which, since it is central to this case, will be set forth at length below.

### B. *Adams House, No. 85–1512*

The appellants, 82 skilled nursing facilities under common ownership, will be referred to collectively as "Adams House." In fiscal year 1981, Adams House claimed an allowance for a "reasonable return on equity capital invested and used in the provision of patient care," pursuant to 42 C.F.R. § 405.429(a)(1)(i) (1983). Following the rules set forth in the Medicare Provider Reimbursement Manual, however, Adams House made no claim relative to assets invested for more than six months, though such assets were listed in the cost report. Later, claiming that the Manual conflicted with the regulations, Adams House filed an appeal with the Board seeking an allowance for these investments. The Board declined review on the ground that it lacked power to consider claims not expressly disclosed to the intermediary in the cost report.

Adams House appealed to the district court pursuant to 42 U.S.C. § 1395oo (f) and both parties moved for summary judgment. Summary judgment was entered in favor of Adams House on October 17, 1984. The case was remanded to the Board, which was ordered to accept jurisdiction. 604 F.Supp. 110, 117 (N.D.Cal.1984).[2] The Secretary timely appealed.

---

1. We note that the procedure for provider reimbursement was greatly changed in the Social Security Amendments of 1983, Pub.L. No. 98–21, 97 Stat. 65. Beginning in 1983, reimbursement for most providers is based no longer on provider costs, but on a fixed rate for each "Diagnosis Related Group."

2. The Board conducted a hearing and ruled against Adams House on the merits of its claim. Adams House appealed to a federal district

C. *Board of Trustees of Stanford, No. 86-1872*

The appellant ("Stanford") owns and operates the Stanford University Hospital. In fiscal year 1981, Stanford claimed reimbursement for Medicare services rendered, using the "average cost per diem" method set forth in the Medicare Provider Reimbursement Manual. Later, claiming that the Manual's rules improperly required inclusion of labor and delivery room patient days in the per diem calculation, Stanford filed an appeal with the Board. The Board declined review on the ground that it lacked power to consider claims not expressly disclosed to the intermediary on the cost report.

Stanford appealed to the district court and both parties moved for summary judgment. Summary judgment was entered in favor of Stanford on January 29, 1986. The Secretary timely appealed and this case was consolidated with *Adams House* for argument.

## II

### ANALYSIS

We review the district court's grants of summary judgment *de novo.* *Vance v. Hegstrom,* 793 F.2d 1018, 1022 (9th Cir. 1986). In other words, we review the Board's refusals to accept jurisdiction under the same standard as did the district court.

Judicial review of Medicare reimbursement decisions is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1982). *See* 42 U.S.C. § 1395oo (f)(1); *Western Medical Enterprises, Inc. v. Heckler,* 783 F.2d 1376, 1380 (9th Cir.1986). According to that Act, the courts must set aside any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. We defer to an agency when it fills gaps or resolves ambiguities in the statute it administers, but we must reject agency rules that thwart the expressed intent of Congress. *See Chevron U.S.A. Inc. v. Natural Resources Defense Coun-*

cil, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Regents of the University of California v. Heckler,* 771 F.2d 1182, 1187 (9th Cir.1985).

The central question in this case is whether the Provider Reimbursement Review Board correctly decided that it had no power to consider reimbursement claims not expressly made to a fiscal intermediary in a cost report. Some federal courts have held that the Board's power is so limited; many of those decisions rely in large part on the thoughtful opinion in *Athens Community Hospital, Inc. v. Schweiker,* 743 F.2d 1 (D.C.Cir.1984) (*"Athens II"*). *See University of Cincinnati v. Sec'y of Health and Human Services,* 809 F.2d 307 (6th Cir.1987); *North Broward Hosp. Dist. v. Bowen,* 808 F.2d 1405 (11th Cir.1987); *Baptist Hospital East v. Sec'y of Health and Human Services,* 802 F.2d 860 (6th Cir.1986); *Community Hosp. of Roanoke Valley v. Health and Human Services,* 770 F.2d 1257 (4th Cir.1985). Other federal courts, including the district court below, have disputed the Board's narrow view of its powers. *See St. Luke's Hospital v. Sec'y of Health and Human Services,* 810 F.2d 325 (1st Cir.1987) (*"St. Luke's "*); *St. Mary of Nazareth Hospital Center v. Dep't of Health and Human Services,* 698 F.2d 1337 (7th Cir.), *cert. denied,* 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983) (*"St. Mary of Nazareth "*). After reviewing the statutory scheme, we believe the Board does have the power and the obligation to hear the appeals of Adams House and Stanford.

The administrative appeals process for health care providers is set forth in the following statutes.

42 U.S.C. § 1395oo (a):

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... if

(1) such provider

court in the District of Columbia. That appeal has been stayed pending our decision.

(A)(i) is dissatisfied with a final determination of ... its fiscal intermediary ... as to the amount of total program reimbursement due the provider ... for the period covered by such report ...

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days....

42 U.S.C. § 1395oo (d):

A decision by the Board shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the Board, and shall be supported by substantial evidence when the record is viewed as a whole. The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

May the Board hear matters not previously raised before a fiscal intermediary? We note initially that the plain language of the statute appears to settle this question. According to section 1395oo (d), the Board may review even matters "not considered by the intermediary." This portion of the statute was considered decisive by the Seventh Circuit. *See St. Mary of Nazareth*, 698 F.2d at 1346. The D.C. Circuit disagreed, arguing that this plain language "does not comport with the statutory scheme, would have adverse practical consequences, and conflicts with the reopening regulations [42 C.F.R. § 405.1885 *et seq.* (1986)] as well as the agency's own interpretation of the statute." *Athens II*, 743 F.2d at 6. The Secretary, in accord with *Athens II*, argues in the present cases that, since the statutory scheme is puzzling or ambiguous, the agency's reasonable interpretation is entitled to deference even if it appears to conflict with one part of that scheme. As the following review of the *Athens II* arguments shows, however, none of the suggested ambiguities warrants departure from the plain language of the statute.

A. *Alleged Conflict Within 42 U.S.C. § 1395oo(d)*

■ The D.C. Circuit held that a literal reading of subsection (d), by which the Board has power to review matters not raised before the intermediary, "ignores and would make meaningless" another part of subsection (d), which limits the Board's power of review to "matters covered by [a] cost report." *Athens II*, 743 F.2d at 6. But it is no contradiction to say that a certain cost, though not explicitly raised before an intermediary, was covered by a cost report. The phrase "covered by a cost report" should be read broadly, in light of similar broad language elsewhere in the statute and regulations. *See* 42 U.S.C. § 1395oo (a) (provider may obtain a hearing "with respect to" a cost report if he is dissatisfied with the intermediary's proposed reimbursement "for the period covered by such report"); *cf.* 42 C.F.R. § 405.-453(f) (1983) (cost reports "generally cover a consecutive 12–month period of the provider's operations").

We believe that a cost is "covered by a cost report" if it was incurred within the period which is the subject of the report and is reflected in that report, even if it is not expressly claimed.[3] There is no conflict within subsection (d).

B. *Alleged Conflict Between 42 U.S.C. § 1395oo(a) and (d)*

■ The D.C. Circuit correctly held that subsections (a) and (d) must be read together. It then held that a literal reading of (d), by which the Board has the power to consider matters not claimed before an intermediary, would conflict with subsection

---

**3.** We do not decide whether a cost incurred within a particular period but completely omitted from the relevant cost report may be said to be "covered by" that report. The First and Seventh Circuits have concluded that such completely omitted matters may be reviewed by the Board. *See St. Luke's,* 810 F.2d at 327–28; *St. Mary of Nazareth,* 698 F.2d at 1346.

(a), which requires that the provider must be "dissatisfied with a final determination" of its intermediary before being entitled to Board review. The Court's summary follows:

It simply is not plausible to contend that Congress has created a scheme where the provider can claim dissatisfaction and have recourse to an appeal procedure because the intermediary failed to read the provider's mind and anticipate all those things the provider would like to be reimbursed for, even though it did not request them.

*Athens II*, 743 F.2d at 6 (footnote omitted).

We understand this argument, but we do not agree. It is perfectly plausible, and apparently agreed by the parties, that in these cases the providers submitted cost reports, the intermediaries made final determinations concerning them,[4] and the providers were dissatisfied with the total ·reimbursement offered. Section (a) requires that a provider be dissatisfied with the total amount of reimbursement offered by an intermediary, not with the intermediary's reasoning process with respect to any specific costs. Moreover, the providers' failure to claim certain costs at the intermediary level reflects no *fault* or *neglect* on them (contrary to the suggestion of the *Athens II* court); it reflects the fact that any such claim would have been pointless. The intermediary has no authority to deviate from the Medicare Provider Reimbursement Manual. As soon as the providers were before the Board, they made their dissatisfaction regarding specific reimbursement policies known. The language of subsection (a) requires no more, and it does not conflict with subsection (d).

### C. *Alleged Adverse Practical Consequences*

The D.C. Circuit identified three closely related adverse consequences that it feared would result if the Board could review cost items not claimed before an intermediary. First,

a provider could list every conceivable cost on its cost report, without claiming reimbursement, and hope that the intermediary will reimburse it for the reported but unclaimed costs, secure that it nevertheless will have until 180 days following the [final determination] to concoct some reasons to urge upon the [Board] for reimbursement....

*Athens II*, 743 F.2d at 6.

We do not believe that our interpretation of the statute encourages frivolous padding of cost reports any more than the *Athens II* interpretation encourages frivolous cost claims. If providers are prepared to list "every conceivable cost" on their cost reports, there is nothing to stop them from overtly disclosing and claiming those costs in the manner mandated by the *Athens II* court. In *both* cases, abuses are contained by the antifraud provisions of 42 U.S.C. § 1395nn. There is no evidence in the record that abuses have occurred.

■ The second adverse consequence asserted is that our interpretation would "deprive [the Board] of the intermediary's analysis and conclusions and make the [Board] the tribunal of original jurisdiction, eliminating a tier of review." *Athens II* at 6–7 (quoting *Athens Community Hospital, Inc. v. Schweiker*, 686 F.2d 989, 997 (D.C.Cir.1982) ("*Athens I*")). We believe that this consequence is not always adverse. As remarked earlier, in the present cases it would have been pointless to present the providers' claims to the intermediaries, which had no power to grant relief. There is no reason to think, in these cases, that the intermediaries' "analysis and conclusions" would have helped the Board.[5] Moreover, it appears that Congress deliberately set up the Board's review procedure as a " 'hybrid,' exhibiting some features of initial factfinding (witnesses, cross-examination, new evidence)

---

**4.** According to 42 C.F.R. § 405.1801(a) (1986), a final determination is an intermediary's decision concerning the total reimbursement due a provider for a particular period, as embodied in the Notice of Program Reimbursement.

**5.** By contrast, in areas within the intermediaries' competence the providers would have an incentive to present their claims directly to the intermediaries.

and some features of review." *St. Luke's*, 810 F.2d at 328.

The third apprehended consequence is that our interpretation would

render virtually meaningless the time limits for the filing of cost reports established by [42 C.F.R. § 405.453(f)(2) (1983)]. Instead of being required to file within three months, with a maximum extension of 30 days, the provider could file new cost claims for as long as its appeal as to any claim was pending before the [Board].

*Athens II*, 743 F.2d at 7 (quoting *Athens I*, 686 F.2d at 997).

We note that this consequence arises only if the Board is allowed to review matters totally omitted from a cost report. We have expressly left this issue open (see note 3, *supra*). Even if the Board's review were extended to matters omitted from a cost report, however, the three month filing regulation would not be "meaningless." It would still require a cost report to be filed within three months of the end of the reporting period. If no report were filed, the provider would have no relief. *See Athens I*, 686 F.2d at 994 & n. 7.

### D. *Alleged Conflict With Reopening Regulations*

This argument is best understood by reference to the factual background of *Athens I* and *Athens II*. *See Athens I*, 686 F.2d at 991–92. In that case, a provider filed a timely cost report but completely omitted certain costs, apparently by inadvertence. The intermediary issued a final determination concerning the listed costs and the provider appealed to the Board. While this appeal was pending, the provider petitioned the intermediary to amend its cost report, pursuant to the reopening regulations, 42 C.F.R. § 405.1885 *et seq.* When this petition was denied, the provider attempted to litigate its entitlement to the unlisted costs before the Board, by adding those issues to its pending appeal. In that circumstance,

the D.C. Circuit concluded that allowing the Board to hear the new claims would "eviscerate the finality provision" of 42 C.F.R. § 405.1885(c), which it interpreted as making an intermediary's decision not to reopen immune from appeal. *See Athens II*, 743 F.2d at 7.

We note that this argument has force only if the Board is allowed to review matters completely omitted from a cost report. We have expressly left this issue open (*see* note 3, *supra*). Even if the Board's review were extended to matters omitted from a cost report, however, the finality provision of 42 C.F.R. § 405.1885(c) would not be eviscerated.[6] Appeal to the Board does not force an intermediary to reopen its deliberations against its will. There is finality at the intermediary level. The D.C. Circuit's idea that this finality should extend to the Board stems from the notion, which we have rejected above, that the Board exercises purely a power of review with no element of initial jurisdiction.

### E. *Conflict With The Board's Interpretation*

■ The D.C. Circuit noted that its interpretation of the statute agreed with the Board's interpretation, citing several Board opinions. *See Athens II*, 743 F.2d at 8. The Secretary argues here that because the statutory language is at least ambiguous, the Board's interpretation of the statute is entitled to substantial deference by this court. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). However, assuming *arguendo* that the statute is ambiguous, the Secretary's reliance on *Chevron* is misplaced for three reasons. First, the Supreme Court recently explained that *Chevron*'s rule of deference to agency interpretations is applicable only in situations where "the agency is required to apply [legal] standards to a particular set of facts." *INS v. Cardoza-Fonseca*, —— U.S. ——, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434

---

6. We assume *arguendo* that the D.C. Circuit analyzed this section of the regulations correctly, though this could be debated. *See Kootenai Hospital Dist. v. Bowen*, 650 F.Supp. 1513, 1520

(N.D.Cal.1987). We agree with the D.C. Circuit that in any case the regulations are "not dispositive" of the proper interpretation of the statute. *Athens II*, 743 F.2d at 8.

(1987). Interpretation of the Board's jurisdiction requires no such application of an accepted legal standard to specific facts; rather, it requires interpretation of a contested legal standard and therefore "is a pure question of statutory construction for the courts to decide." *Id.* Second, the Board has not consistently adhered to a single interpretation of its jurisdictional authority, as it sometimes has reviewed matters not presented to an intermediary. *See St. Luke's*, 810 F.2d at 330 and cases cited there. In *Cardoza-Fonseca* the Supreme Court declared that "the inconsistency of the positions [an agency] has taken through the years" is grounds for "rejecting the Government's request for heightened deference to its position." 107 S.Ct. at 1221 n. 30. Finally, deference to an agency's interpretation of the statutory scheme it is designed to administer is not warranted when the "construction requires consideration of broad concerns beyond the agency's expertise." *Grunfeder v. Heckler*, 748 F.2d 503, 505 (9th Cir.1984) (en banc). While the Board may enjoy special expertise in interpreting and applying the substantive provisions of the Medicare statutory scheme, unlike courts it has no special expertise at interpreting provisions governing jurisdiction. Hence, even if we agreed with the Secretary that the statutory language was ambiguous (which we do not), we would still be bound to embrace the most plausible interpretation of the jurisdictional provision without deferring to the Board's preferred construction. Along with the First and Seventh Circuits we read the statute and regulations to allow the Board to consider matters included in a cost report but not expressly claimed before an intermediary.

■ One question remains: *must* the Board consider all matters timely raised before it? The First Circuit held that the Board had discretion to hear appeals or not, relying on language in 42 U.S.C. § 1395oo (d) providing that the Board "shall have the power" to do certain things. *See St. Luke's*, 810 F.2d at 327–28. We disagree. The discretionary language does not describe the Board's power to accept or reject appeals. It describes the Board's options once an appeal is filed. More fully quoted, section (a) provides that the Board "shall have the power to affirm, modify, or reverse a final determination ... and to make any other revisions...." The Board has no discretion to reject an appeal, for as 42 U.S.C. § 1395oo (a) provides,

> Any provider of services which has filed a required cost report within the time specified in regulations *may obtain a hearing* with respect to such cost report by a Provider Reimbursement Review Board.... (emphasis added)

The word "may" in the emphasized language connotes not contingency but entitlement. *Cf. Goodman v. City Products Corp.*, 425 F.2d 702, 703 (6th Cir.1970) (the phrase "a civil action may ... be brought" refers to "the option of the aggrieved party to bring a lawsuit, not to a discretion in the Court....").

## III

### CONCLUSION

Our review of the *Athens II* rationale convinces us that the Medicare statute is not puzzling or ambiguous, despite the Secretary's claims. On the contrary, it plainly requires the Board to consider matters included in a cost report and timely appealed, even if not expressly claimed before an intermediary.

In the *Adams House* case, the appellants listed the assets held for over six months in their cost report and included a claim for "reasonable return" in their timely appeal to the Board. The district court ordered the Board to consider this issue. That decision is AFFIRMED.

In the *Stanford* case, the appellant included information in its cost report concerning labor and delivery room patient days and included a claim for recalculation of its "average cost per diem" in its timely appeal. The district court ordered the Board to consider this issue. That decision is

AFFIRMED.